THE BRANDI LAW FIRM
Thomas J. Brandi (CA Bar No. 53208)
tjb@brandilaw.com
Brian J. Malloy (CA Bar No. 234882)
bjm@brandilaw.com
354 Pine Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 989-1800
Facsimile: (415) 989-1801

DEREK G. HOWARD LAW FIRM, INC.
Derek G. Howard (CA Bar No. 118082)
derek@derekhowardlaw.com
Ashley M. Romero (CA Bar No. 286251)
ashley@derekhowardlaw.com
42 Miller Avenue, Mill Valley, CA 94941
Telephone: (415) 432-7192
Facsimile: (415) 524-2419

*Attorneys for Plaintiff Chandler Emerson*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHANDLER EMERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHERN TRUST CORPORATION and NORTHERN TRUST COMPANY,<br><br>Defendants. | Case No. 3:23-cv-00241-TLT<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. BREACH OF FIDUCIARY DUTY<br>2. ACCOUNTING<br>3. UNJUST ENRICHMENT/QUASI-CONTRACT/RESTITUTION<br>4. UNFAIR COMPETITION<br>5. BREACH OF FIDUCIARY DUTY<br>6. ACCOUNTING<br>7. UNJUST ENRICHMENT/QUASI-CONTRACT/RESTITUTION<br>8. VIOLATION OF THE CALIFORNIA ELDER ABUSE STATUTES<br><br>**DEMAND FOR JURY TRIAL** |

## I.     SUMMARY OF THE FIRST AMENDED COMPLAINT

1.     This is an individual and class action brought by Plaintiff Chandler P. Emerson in her capacity as a trust beneficiary to her family trust ("E.V. Fallgren Trust" or "Fallgren Trust") created through testator E.V. Fallgren's will dated August 23, 1961.

2.     This case arises from corporate self-dealing by the Northern Trust entities, specifically including Defendants NORTHERN TRUST CORPORATION ("NTCORP"), a financial holding company, and NORTHERN TRUST COMPANY ("Northern Trust" and, collectively with NTCORP, "Defendants").  The highest levels of Defendants' upper management have approved the self-dealing at the expense of the E.V. Fallgren Trust and the putative class of Northern Trust-administered trusts who have suffered common, uniform losses under centralized management.

3.     Northern Trust is compensated for its trustee duties through an annual trust administration  fee taken out of trust assets.  A related entity, Northern Trust Investments, also collects an "advisory fee" for investment advice.  This latter fee is not at issue in this case.

4.     Violating the trustee duties of loyalty and prudent administration, Defendants have charged additional and excessive standard fees ("the overcharges") for preparing routine fiduciary tax returns.

5.     The overcharges alleged herein have been assessed pursuant to a fee schedule that only lists a flat amount for the "Tax Preparation Services."  There has been no other material information provided to the Plaintiff and the Class, including information that discloses the existence of a potential claim for a violation of the duty of prudent administration, the duty of loyalty, or even a breach of trust.  Rather, the "fee schedule" that Northern Trust sends to the Class during the Class Period is the trustee's official advisory that the trustee considers the fee schedule to be the proper and reasonable amount to charge.

6.     Accordingly, there has been no reason for any beneficiary to conclude that Northern Trust might be overcharging them.  A trustee is under a duty to communicate to the beneficiary all information that is reasonably necessary to enforce a beneficiary's right to prevent or redress a breach of trust.  Further, mere acquiescence to a fee schedule does not constitute knowledge of a

breach of trust.  To conclude otherwise could only mean that every beneficiary that receives a fee schedule or an account statement with a fee must assume at that point forward that there is something awry and take legal action.  As such, Northern Trust has provided the beneficiaries no facts which would constitute notice that Northern Trust's published fee is unreasonable.

7.    For example, in a 2014 identical form "Notice" sent to Plaintiff and the putative Class, the trustee advised that the tax return preparation fees would be increased in 2015 "[t]o support our commitment to providing the highest level of professional tax services."

8.    And in 2016, Northern Trust sent a similar announcement of raising the fees effective January 2017, "to help meet your needs in an evolving financial environment" and "to continue providing the highest level of professional services."

9.    However, as set forth herein, unbeknownst to Plaintiff and the putative Class, the amounts listed on the notices and/or fee schedule and the stated premise for the fee increases were false.

10.    The fees charged during the Class Period bear no relation to the minimal internal costs and scant amount of human work required.  In order to drive its profits higher and continue to increase fees, Northern Trust has concealed its costs from the Plaintiff and the Class.

11.    Northern Trust has not provided any written information to either its own account officers, supervisors  or the beneficiaries of the trust about the amount of the tax return preparation fees that would suggest the fees were not reasonable.  To the contrary, every form communication from trustee Northern Trust about the tax return preparation fee advised that the fees were reasonable and necessary and commensurate with the finest trust services available.

12.    Northern Trust has admitted under oath from the Senior Vice President and Manager of Global Client Tax Services Matthew Tushman that Northern Trust "does not log the amount of time that preparing each tax filing takes."  Without such documentation, Defendants have no means to even approximate, much less prove, whether their tax return preparation fees are reasonable, as measured by any objective standard including but not limited to the California Probate Code, California Rule of Court 7.776 or relevant case law.

13.     Under the duty of prudent administration, Northern Trust should be keeping a detailed record of services for which extra compensation is sought above the base fee.  Defendants, including specifically Global Client Tax Services (which Mr. Tushman has publicly stated is part of NTCORP),[1] have failed to keep any internal records justifying those charges.  At least part of the reason for not keeping records has been to gain an accounting advantage to itself by describing its operations as a cost center, thereby reducing Defendants' tax basis.  Another reason for not keeping records has been to thwart any investigation or suit from a beneficiary that demands that trustee Northern Trust document the basis for its compensation as being "reasonable."

14.     Additionally, Defendant Northern Trust has charged and is continuing to charge an additional Class Action Distribution Service Charge fee (the "Class Action Distribution Charges"), for which the Fallgren Trust was charged $25.00.

15.     The Class Action Distribution Charges violate Defendants' fiduciary duties.  On information and belief, for custodial accounts, Northern Trust has developed a platform that uses highly automated computerized systems to monitor class action settlements, file claims, and make deposits of class action settlements received.  This platform receives and accumulates the necessary class action information and is doing so regardless of obligations owed to the personal trusts under administration.

16.     These duties, which take little time or effort, are not a basis for additional compensation.  The duties are part of the basic trust administration duties for which Northern Trust already receives compensation in the form of its annual trust administration fee.  In recognition of its duties, for a long period of time, Northern Trust and its predecessors did not charge an additional Class Action Distribution Charge.

17.     The Class Action Distribution Charge is not related to any actual charges that Defendants incur respective to the Fallgren Trust.

[1] See e.g. Mr. Tushman's verified Linked In profile, stating that he is the "Senior Vice President, Manager of Global Client Tax Services at Northern Trust Corporation." https://www.linkedin.com/in/mtushman/ (Visited June 28, 2023).

FIRST AMENDED CLASS ACTION COMPLAINT

18.     Plaintiff alleges on information and belief that Northern Trust does not keep any records about the Class Action Distribution Charge that would allow either the Plaintiff or the trustee to deduce whether the charges are fair or reasonable.

19.     This charge is an unlawful additional profit center above the annual administration fees.

20.     Northern Trust has neither sought nor obtained written consent to either the tax return preparation overcharges or the Class Action Distribution Charges.

21.     Under the duty of loyalty, Defendants are required to act solely in the interest of the Fallgren Trust and the putative Class of trusts set forth herein.

22.     The E.V. Fallgren trust was created under the laws of the State of California.  The original two trustors are long deceased.

23.     Northern Trust sends account statements to the Plaintiff at her place of residence in this District.

24.     Northern Trust is the trustee to the Fallgren Trust, administers this trust, has offices in the Northern District of California encompassing Mendocino County, and as a national fiduciary has offices throughout the State of California and in a total of 19 states.

25.     With a trustee's immense powers, the legal counterpoint to any trustee's absolute authority is the trustee's obligation to act solely in the best interests of the beneficiary, to whom all the trust's benefits belong.  *See* Cal. Prob. Code §§16002(a); 16004(a).

26.     The trust law of every state, and specifically including the State of California, mandates the duty of loyalty overrides all decisions that are in the discretion of a trustee and is also codified in every state where it administers trusts, including California Probate Code §16002 thereby governing all the actions and omissions of Northern Trust that are the subject of this First Amended Complaint.

27.     It is hornbook law that a trust relationship is unlike arms-length commercial banking. Corporate fiduciaries like Northern Trust are not held to the "morals of the marketplace" or "not just even to be honest alone."

28. The landmark case *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545 (N.Y. 1928), cited by hundreds of courts since its writing, states that for a trustee, "the punctilio of an honor the most sensitive is then, the standard of behavior."

29. Northern Trust's business plan(s), including the use of a NTCORPO overseas affiliate, is approved by Defendant NTCORP. Together the two entities have elevated their self-interest above that of the Plaintiff and her trust.

30. Northern Trust has breached the duties of loyalty and prudent administration by overcharging for the preparation of routine, mandatory tax returns and assessing the Class Action Distribution Charges.

31. In addition to collecting annual administration fees, Defendants have created secret profit centers on top of the annual fees.

32. Further, by taking wrongful fees, Northern Trust has used the putative class members' trust property thereby creating a constructive trust to the benefit of the Plaintiff and the putative Classes. This includes the overcharges when billing for fiduciary tax return preparation, the taking of Class Action Distribution Charges and any other unknown fees which are either not be listed on account statements or not properly accounted.

33. Each of these overcharge mechanisms forms the basis of a certifiable class under Federal Rule of Civil Procedure 23.

## II.     PARTIES

34. Plaintiff CHANDLER EMERSON is a resident of Mendocino County, located in the Northern District of California.

35. This District is an appropriate venue of this suit as Plaintiff is a beneficiary of the Fallgren Trust and resides in this District.

36. Defendant Northern Trust Company is an Illinois banking corporation with its principal place of business in Chicago, Illinois. Northern Trust is also a subsidiary of Defendant NTCORP.

37. Northern Trust administers trusts throughout the State of California.

38.     Defendant NTCORP is a bank holding company as defined in the Bank Holding Act of 1956 and a Delaware Corporation with its headquarters at 50 South La Salle St, Chicago, Illinois 60603.  NTCORP states that if provides "Innovative financial Services and guidance to corporations, institutions and affluent families and individuals globally."

39.     NTCORP is the holding company for its family of banking and trust companies, including the flagship subsidiary Northern Trust and other units bearing the company name.

40.     The members of the Board of Directors ("Board") of NTCORP approve and/or appoint the senior management of Northern Trust.  The NTCORP Board's actions confer fiduciary status on NTCORP.

41.     Plaintiff is informed and believes that Defendant NTCORP is the parent company of Northern Operating Solutions Private Limited and/or Northern Trust India.  On information and belief, Northern Operating Solutions Private Limited and/or Northern Trust India are overseas entities that perform tax return preparation work for trusts for which Defendant Northern Trust serves as trustee.  On information and belief, NTCORP controls Operating Solutions Private Limited and/or Northern Trust India.  As such, NTCORP plays an important and material role in the assessment of the standard tax return preparation fees that are the subject this case.

42.     In each of the acts alleged herein Defendants acted in the course and scope of, in furtherance of, and in association with each other.

43.     NTCORP has a fiduciary obligation to ensure that Northern Trust complied with all relevant state law obligations, and it was incumbent on the NTCORP Board to remedy any breaches of fiduciary violations.  Notably, from public filings, Global Tax Services is a division of NTCORP while at the same time providing trust tax services to Northern Trust.

44.     The NTCORP Board and Northern Trust as an entity have not taken any action to act on any of the facts described herein or to provide the legal relief that Northern Trust is obligated to provide under trust law.

III.    JURISDICTION AND VENUE

45.     This District Court has jurisdiction over the subject matter of this action.

46.    Defendant Northern Trust administers the Fallgren Trust and the putative Class trusts both in the State of California and in a total of 19 states.

47.    Northern Trust sends regular periodic accounting statements and other form communications to the Plaintiff at her home address in Mendocino County.

48.    On information and belief, Plaintiff alleges that Northern Trust administers the Fallgren Trust as domiciled in California and subject to the laws of California.

49.    On information and belief, part of the administration of the Fallgren Trust and other California domiciled trusts is currently based in Los Angeles.

50.    Under Northern Trust policy and practice, the domicile of the trusts that Northern Trust administers is not based on the residence of any of the trust beneficiaries.  On information and belief, Plaintiff alleges that the trust's domicile is based on the location of the trust and the governing California law at the time of creation.  Plaintiff further alleges that the rules governing the administration of the trust is unrelated to the location of a Northern Trust office in Los Angeles.

51.    The decisions concerning the charging of the two fees at issue here are decided and implemented throughout the country from Defendants' headquarters in Chicago, Illinois.  This is also the location where Northern Trust and its parent company NTCORP are based.

52.    On information and belief, Plaintiff alleges that there are hundreds of trusts that Northern Trust administers out of its offices in Northern California.

53.    Defendant Northern Trust has 8 offices throughout California, including in Mill Valley in Northern California, where it administers California domiciled trusts.

54.    Northern Trust regularly sends accountings, and cash money, pursuant to its trust and contractual obligations to beneficiaries of California-based trusts.

55.    Northern Trust sends accountings through the mail or sends the statements electronically regarding all its California administered trusts, regardless of the residence of the trust beneficiaries.

56.    Each of the Defendants conducted business throughout California on a regular and continuous basis during the relevant time period using the U.S. Mail and other forms of communication.

57.    The original trustors of the E.V. Fallgren Trust created the trust under the laws of the State of California.

58.    The trust was then subject to a subsequent trustee pursuant to a written agreement with Northern Trust's predecessor trustee, Title Insurance and Trust Company ("TI") and its successor in interest, Trust Services of America ("TSA", and collectively with TI, "TI/TSA").

59.    The uniform practices and policies that are at issue in this litigation have been formulated and/or implemented in not only California but also a uniform fashion on a national basis.

## IV.    FACTUAL ALLEGATIONS

### A.    Northern Trust's Predecessor Trustees to the E.V. Fallgren Trust

60.    For decades, Northern Trust has administered the E.V. Fallgren Trust as if a court order dated January 24, 1964, created the Fallgren Trust.

61.    Before 1992, when Northern Trust became the trustee of the Fallgren Trust, there were two individual trustees, both of whom are now deceased.

62.    Under the terms of the Fallgren Trust, there is no provision allowing for the collection of the two overcharges as alleged herein.

63.    Under the terms of the will of E.V. Fallgren, executed on November 1960, TI became the successor trustee to the two original individual trustees, Mrs. Ruby Fallgren and John Gilliam.

64.    On or about January 31, 1982, TI consolidated with TSA.

65.    On information and belief, Plaintiff alleges that during early periods of the Fallgren Trust's administration, and even before some of the current beneficiaries were alive, there was no charge of "extra fees" for the preparation of fiduciary tax returns.

66.    As a result of TI's acceptance of the trustee role, Defendant Northern Trust has a fiduciary obligation to preserve all records of the Fallgren Trust, dating back to all trustees' first date

of acceptance of the trust.  On information and belief, Plaintiff alleges that those records will show when an "extra fee" for tax preparation ensued.

67.    TSA was a bank with offices in California.  It was authorized by the California Superintendent of Banks to act as a fiduciary through branch offices in California as well as at TSA's principal place of business in Los Angeles, California.

**B.    Northern Trust's Acquisition of the Fallgren Trust in 1992**

68.    From the mid-1980s until TSA's sale of certain trust assets in or around 1992 to Defendants, TI/TSA was the trustee for the Fallgren Trust.

69.    Meanwhile with the implementation of the new California Probate Code on July 1, 1987, corporate trustees faced a new regulatory scheme where annual reports or petitions for approval of fees by Probate Codes were eliminated.  As explained below, the lack of oversight led to alleged overcharges by trustees that were no longer to receive Probate Code approval before taking annual compensation.

70.    In late 1991, Northern Trust of California expressed interest in expanding its trust-related interests and negotiated a purchase agreement with the CalFed Bank ("CalFed"), which owned the shares of TSA, and the parties entered into an agreement in or around September 1991.

71.    As part of a formal acquisition agreement dated around January 1992, TSA transferred to its Riverside office that portion of its trust business that TSA intended to sell to Northern Trust, including the Fallgren Trust account, and the putative class member trust accounts.

72.    Thereafter, Northern Trust became successor trustee to the Fallgren Trust and putative class members' trust accounts.

73.    On information and belief, Plaintiff alleges that Northern Trust has failed to maintain complete copies of the complete Fallgren Trust files.

74.    After the acquisition of the Fallgren Trust, two Southern California beneficiaries alleged that Northern Trust overcharged 300 "contractual fee" trusts.  Under such trusts, the fees were capped under the trust agreements that Northern Trust Bank acquired from predecessor trustees in or around 1992.

75.    This earlier class action alleged that Northern Trust knew its predecessor trustees like TSA and TI had overcharged tax return preparation fees from 1981-2003, and despite this knowledge, Northern Trust attempted to conceal the true nature of the predecessors' overcharges.[2] On a class basis, Northern Trust settled the overcharge matter and direct payments were made to over 1300 class members.

76.    Rather than assure that after 2003 there were not future overcharges of tax return preparation overcharges to the thousands of other trusts it continues to administer, Northern Trust embarked on a new method to overcharge, ratcheting up the fees to the point where now Northern Trust is charging $1000 for completion of standard, routine tax returns.

**C. Northern Trust Charges an Additional Standard Tax Return Preparation Fee to the Class Trusts in Addition to the Trust Administration Fee**

77.    Northern Trust sends regular accounting reports and other communications and materials to the Plaintiff at her residence in Mendocino County.

78.    The putative class members alleged herein all receive the same uniform type of account statements that state at the end that the statement satisfies Northern Trust's reporting obligations but that these accountings are an "interim account."

79.    While administering the Plaintiff's trust, Northern Trust has been operating under a variety of names including Northern Trust Bank of California and Northern Trust Bank.

80.    This First Amended Complaint seeks a remedy from the appropriate Northern Trust or NTCORP entities, regardless of name or changes in bank charters.

81.    For an irrevocable trust like the Fallgren Trust, Northern Trust charges an annual trust administration fee based on an internal schedule.

82.    A trustee has a legal obligation to ensure a tax return is filed.  This has been a core duty of a trustee since the inception of mandatory filing of fiduciary returns.

---

[2]  This case does not involve these types of trusts.  Rather, the trusts in this case are all subject to the standard fees listed on Northern Trust's published "fee schedule" which is the official document that the trustee sends out to the trust beneficiaries whenever there is a change in fees.

83.    In addition to an annual trust administration fee, Northern Trust also charges a fee for the preparation of the fiduciary tax returns.

84.    Northern Trust has used a series of form letters which are identical and sent on a national basis.  For example, on or about October 31, 2016, Northern Trust prepared and disseminated a form letter announcing tax fee charges.

85.    Northern Trust charges an additional line-item charge which is typically posted in the third quarter, after the filing of the tax return.

86.    Collection of these charges has become a profit center for Defendants, despite their role as trustee.

87.    Northern Trust advises it is charging an additional tax return preparation fee through template form letters and fee schedules sent to the beneficiaries through mass mailings.

88.    While Northern Trust sometimes provides the Schedule of Fees to a beneficiary, Northern Trust's Schedule of Fees and its accounting statements do not indicate in any manner that the fee may be unreasonable or excessive.  For this reason alone, no recipient of the statement would be able to understand if the fee being charged amounts to a reasonable fee or if instead Northern Trust has engaged in a secret markup of the fee.  Further, when a beneficiary objects to a fee as being unreasonable, the trustee bears the burden of showing that the fee is reasonable, which includes records establishing the reasonableness of the fee.

89.    The tax return preparation work is highly automated and conducted through the Tax Division's software.  As alleged herein, the head of Global Tax Services has previously testified that Northern Trust is using an NTCORP overseas affiliate to provide support and servicing for the tax return preparation.

90.    Neither a beneficiary nor even the client administrator or many other Northern Trust executive have any idea of the true cost for Northern Trust to prepare a fiduciary tax return.  In fact, Northern Trust has stated under oath that it does not maintain any cost basis for this charge.

91.    The line-item fees charged pursuant to the fee schedules over time are:

| Year | Line-Item Fee | | Year | Line-Item Fee |
|------|---------------|---|------|---------------|
| 2008 | $400 | | 2016 | $900 (federal) $100 (state) |
| 2009 | $400 | | 2017 | $900 (federal) $100 (state) |
| 2010 | $400 | | 2018 | $900 (federal) $100 (state) |
| 2011 | $650 | | 2019 | $900 (federal) $100 (state) |
| 2012 | $650 | | 2020 | $1,000 |
| 2013 | $650 | | 2021 | $1,000 |
| 2014 | $900 | | 2022 | $1,000 |
| 2015 | $900 | | | |

92.    The fees charged to the class trusts match the fee schedules.  Based on charts produced in other litigation, for 2013-2018, for 86-90% of the irrevocable trusts (the discretionary trusts) charged a tax return preparation fee, Northern Trust charged the standard fee for that year as follows:[3]

| Year | Trusts Charged | Total Trusts | Percentage | Fee |
|------|----------------|--------------|------------|-----|
| 2013 | 10,205 | 11,320 | 90% | $650[4] |
| 2014 | 9,659 | 11,279 | 86% | $900 |
| 2015 | 9,928 | 11,203 | 89% | $900[5] |
| 2016 | 9,579 | 11,081 | 86% | $900 or $1,000 |
| 2017 | 9,476 | 11,003 | 86% | $900 or $1,000 |
| 2018 | 9,337 | 10,773 | 87% | $900 or $1,000 |

93.    Although Northern Trust charged thousands of trusts the exact same fee, some trusts were charged fees outside the norm.  For instance, in 2014, Northern Trust charged one trust $11,880.00 for tax preparation, but then in 2017 charged a different trust $3.00.  Northern Trust can

---

[3] These figures are for the largest category of trusts, the non-grantor (irrevocable) trusts.  Similar results exist for the standard fees applicable to the charitable and grantor trusts.

[4] The fee schedule then increased to $900 per tax return.

[5] Fee schedule then increased to $900 per federal tax return plus $100 per state tax return.

easily identify these outliers, which are not part of the proposed Class.  Notably, when Northern Trust charges a fee different from the standard fee, it usually charges more.[6]

94.     In addition to ensuring that a tax return is filed for each trust, Northern Trust as a trustee must also maintain cost information.  A cost record for tax return preparation fees is the time record for individuals working on the return.

95.     Another one of Northern Trust's core duties is to maintain records to prepare the tax returns.  Part of Northern Trust's job as trustee is make sure it keeps track of all the money that comes in and goes out of the trusts.  Nevertheless, Northern Trust does not to maintain records showing the time or cost to prepare and file the fiduciary tax returns.

96.     Northern Trust's preparation of fiduciary returns is highly automated.  Northern Trust employs very junior personnel to complete the assemblage of a return.  Northern Trust has admitted under oath that even though it is a trustee, Northern Trust does not log the amount of time that preparing each tax filing takes.  Instead, Northern Trust simply estimates it takes two hours.

97.     Northern Trust admits under oath that it is unable to provide any evidence on how much it costs to prepare the trusts' tax returns.  Northern Trust's Tax Department has an internal expense report.  This report is not prepared for or seen by trust administrators in Los Angeles.  The report does not contain any accounting of the actual costs of preparing a return.  There is no line-item for preparing fiduciary returns.

98.     The total expenses associated with the Tax Department would not only be for fiduciary income tax returns, making an accurate assessment impossible.  It is not consistent with any industry practice to take the cost of an entire department and set the fees to cover the costs of other activities not related to the preparation of trust tax returns.  The expense report is therefore not tied to the cost of preparing fiduciary returns.

99.     The tax return for the Class trusts should take less than an hour to prepare and review using the highly automated system internal to Northern Trust.  The charges for Northern Trust's

---

[6]  In 2018, of the 1,436 trusts charged a fee different than the standard fees, 1,245 (87%) were charged a higher fee.  Similar results exist for the outlier charges exceeding the standard fees in 2017 (87%); 2016 (93%); 2015 (84%); 2014 (62%); and 2013 (95%).

preparation of tax returns are not reasonable and excessive, meaning by definition Northern Trust has made, and continues to make, an undisclosed and unreasonable profit in violation of the fiduciary duty rules.

100.     Northern Trust keeps the lack of recordkeeping and lack of time and cost information secret from reviewing courts and trust beneficiaries alike.

101.     Consistent with Northern Trust's national practices, the Fallgren Trust has been routinely charged the standard tax return preparation fee since the inception of tax return preparation fees.

102.     Neither the original trustors nor the Plaintiff agreed to a separate fee for the preparation of fiduciary returns much less the amount of the fees charged.

103.     On information and belief, Plaintiff alleges that NTCORP and/or Northern Trust has outsourced the preparation of returns to an unidentified overseas party, either affiliated or non-affiliated, and has not informed the Plaintiff or the putative Class of this overseas component.  A beneficiary would not know, nor have any reason to suspect based on the account statements and form fee schedules, that Northern Trust has tax return preparation work done overseas.

104.     Discovery is necessary to identify whether a fundamental duty of the trustee Northern Trust has been delegated without consent or knowledge on the part of the Plaintiff and the putative Class.

105.     The delegation of tax return preparation, including the transmittal of sensitive financial information overseas, likely further reduces costs, also allowing the trustee to take an unreasonable profit.

**D. Defendants Breached Their Fiduciary Duties to the Fallgren Trust and the Tax Return Preparation Fee Class**

106.     Under statute and the common law of trusts applicable in the State of California and all the states where Northern Trust administers a trust, all corporate fiduciaries have and continue to be held to the highest standard of care regarding the duty of prudence.

107.     Northern Trust has admitted these legal duties apply to it when accepting a trusteeship.

108.    During the Class Period, the Fallgren Trust and the putative Class trusts have been yearly charged the standard line-item fee from $650 to $1,000 for the preparation of the fiduciary tax returns.

109.    Northern Trust estimates it takes two hours of work by unknown low-level employees.  Plaintiff alleges on information and belief that part of that work is both overseas and inexpensive.

110.    Further, whatever work is performed domestically, it is done on a bulk automated basis.

111.    The industry wide basis for charging for the preparation of tax returns is to charge by the hour.

112.    Northern Trust's Global Tax Services uses bulk computer processes to prepare all returns in uniform identical fashion.  Northern Trust has kept no records that explain the basis for the fee.

113.     In choosing to keep no records supporting a fee, a trustee does so at its own peril as trust law provides generally that where a fee is challenged as being unreasonable, the fee may be subject to either reduction or elimination due to the lack of substantiating records.

114.    Thus, under uniform trust law, Northern Trust must return all or most of the fees taken.

115.    In addition to charging excessive and unreasonable standard fees for routine preparation of fiduciary tax returns, under a uniform practice, Defendant Northern Trust has failed to make the necessary material disclosures, including but not limited to, Northern Trust's preparation of tax returns in bulk format, and that the work and related confidential information has been sent overseas in order to drive up profits.

116.    The uniform practice of charging excessive and improper fees in the amounts of $650 to $1,000 per year, violates the duties of loyalty and prudent administration by placing Defendants' own financial interest above the interest of Plaintiff and members of the proposed Tax Return Preparation Fee Class, as defined below.

117.     As a result of the foregoing, Defendants' actions, in violation of their fiduciary duties, harmed Plaintiff and the members of the proposed Tax Return Preparation Fee Class through payment of improper and excessive fees.

118.     Under a uniform, national practice, Defendants have not provided a proper accounting to the Plaintiff and members of the proposed Tax Return Preparation Fee Class of the amounts improperly taken related to tax preparation fees.  This includes but is not limited to (a) the failure to disclose information on account statements that Northern Trust is required by law to provide to trust beneficiaries and (2) that on information and belief Northern Trust has delegated aspects of tax preparation to unidentified overseas parties.

119.     As a result of the foregoing, Defendants' actions, in violation of their fiduciary duties, harmed Plaintiff and the members of the proposed Tax Return Preparation Fee Class through payment of improper and excessive fees.

**E.  Class Action Distribution Charges**

120.     Northern Trust has been charging the Fallgren Trust and putative class trusts a "Class Action Distribution Charge."  Aside from advising of the taking of this charge on account statements, Northern Trust has never explained in writing to the beneficiaries or the Class what the basis is for the fee, much less the amount.  On information and belief, this charge is for ostensibly monitoring class action settlements, filing claim forms, and depositing class action settlements into trust accounts.

121.     Upon information and belief, the Class Action Distribution Charge assessed to the Fallgren Trust was $25.00 and is duplicative of Northern Trust's annual fee for administrating the trust.  Northern Trust has been "double dipping" trust fees, tacking on this charge without beneficiary consent.

122.     The duties associated with depositing a class action settlement do not differ from any other deposit and are part of the normal administration of the trust.  It is no different than gathering the requisite records for dividends or interest on accounts, which is part of routine trustee duties.

123.     Instead of merely depositing cash or benefits from class actions for no additional fee,

Northern Trust has created a profit center.

124.    Plaintiff is informed and believes that Defendants process and monitor securities litigation that settle through United States courts and files claims on behalf of custodial clients. Without reaching out, Northern Trust receives the name of the court appointed claims administrators and Northern Trust automatically receives notification of class action settlements as well as other interactive data and information from Mondaq.com.  Because of the existence of a platform to undertake this activity for custodial (pension) accounts, Northern Trust spends minimal time and cost in monitoring class action settlements for personal trust accounts, and its actions are limited to filing claims and making deposits of class action settlements into trust accounts and then like any other payment, posting disbursements where appropriate.

125.    All of this work is duplicative of the same asset administration that Defendants provides to its larger custodial clients like pension funds.  On information and belief, Plaintiff alleges that Northern Trust set up a platform for custodial clients that allowed Northern Trust to process and track class action settlements.  Without adequate notice to Plaintiff and the Class, Northern began to charge personal trusts for the same work, but with an extra fee.

126.    Plaintiff is informed and believes that Northern Trust uses highly automated computerized systems to accomplish these minimal administrative duties.

127.    These duties are part of the basic trust administration duties for which Northern Trust already receives compensation through its annual trust administration fee.

128.    The Class Action Distribution Charge is not related to any actual charges that Defendants incur respective to Plaintiff's or the other putative Class members' trusts.

129.    The Class Action Distribution Charge is not an "extraordinary service" for which additional compensation over and above the trust administration fee is allowed.

130.    The fee is disconnected from any underlying cost maintenance and is both unfair and unlawful.

131.    Plaintiff's trust has been charged the fee at least on October 6, 2020, and has been unaware that the fee is artificial and unlawful.  As an open trust, the Fallgren Trust is subject on an ongoing basis to the collection of the Class Action Distribution Charge.

132.    Further, Northern Trust has closed trusts without disclosing that it has taken an unlawful fee.  As such, a constructive trust remains for those trusts that were closed without return of the charge.

### V.    CLASS ACTION ALLEGATIONS-DEFINTIONS-RULE 23 REQUIREMENTS

133.    Plaintiff brings this action on her own behalf and on behalf of all trusts similarly situated in the 19 states where Northern Trust acts as trustee under Rule 23 of the Federal Rules of Civil Procedure) on behalf of the following Classes.

134.    The Tax Return Preparation Fee Class is defined as:

> From 2013 to the present, all grantors, trustors, beneficiaries, remaindermen, co-trustees and/or successor trustees of Class Trusts, which are defined as all revocable or irrevocable personal or charitable trusts: (1) for which Defendants served or serve as trustee, and where Defendant charged a standard "fiduciary" or "tax preparation" fee pursuant to Northern Trust's fee schedules for one or more of the covered years, and (2) the paid preparer of the fiduciary return was Northern Trust.

135.    The Class Action Distribution Charge Class is defined as:

> From the first date of the inception of the Class Action Distribution Charge to the present, all grantors, trustors, beneficiaries, remaindermen, co-trustees and/or successor trustees of Class Trusts, which are defined as all revocable or irrevocable personal or charitable fixed-fee trusts: (1) for which Northern Trust served or serves as trustee and (2) for which Northern Trust took a service charge for depositing class action settlement funds into a trust account.

136.    **Numerosity**: For the two classes, the Defendant Northern Trust serves as the trustee of hundreds of trusts in California, and thousands of trusts in the other 18 states, each of which may have multiple trustors, grantors, trust beneficiaries, remaindermen, co-trustees and/or successor trustees.

137.    Plaintiff also brings this action for equitable, injunctive, and declaratory relief pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The Class is so numerous that joinder

of all members is impracticable.  While the exact number of Class members is unknown at this time, Plaintiff is informed and believes that the Class members are in excess of one thousand trusts.

138.    While Plaintiff does not know the exact number and identities of these class members, as trustee, the identities are known to Northern Trust. This is because, as trustee, it is Northern Trust's core duty to know the identity of the trusts and the beneficiaries.

139.    The large number of potential Class members, who are located throughout the United States and are geographically dispersed makes joinder of all members impracticable.

140.    **Common Questions of Law or Fact Predominate:**  Plaintiff and the Tax Return Preparation Fee Class allege that Northern Trust overcharges additional line-item standard fees based on a uniform fee schedule for the preparation of routine, mandatory tax returns, that those fees bear no relation to the amount of cost or time required for these core fiduciary duties, and that Northern Trust fails to keep any records justifying the charges assessed in performing these routine duties.

141.    Plaintiff and the Class Action Distribution Charge Class similarly allege that Northern Trust in breach of its fiduciary duties unlawfully charges a class action settlement distribution charge against trust assets.

142.    The questions of law and fact common to all the proposed Class members predominates over any questions affecting only individual proposed Class members. The questions of law and fact common to the proposed Class members include, without limitation:

> a.    whether Northern Trust is already compensated for its trustee duties, including for preparing and filing routine tax returns, through its annual trustee administration fees;
>
> b.    whether Northern Trust charges an additional line-item standard fee for the preparation and filing of routine mandatory tax returns;
>
> c.    whether Northern Trust utilizes tax return preparation fee schedules with standard fees;
>
> d.    whether Northern Trust implements its tax return preparation fee increases through template form letters and fee notices;

e.    whether in practice the Class trusts are charged fees consistent with the fee schedules;

f.    whether Northern Trust keeps records for any class trust regarding how much time it takes Northern Trust to prepare and file these returns;

g.    whether the standard fees on the fee schedules are unreasonable;

h.    whether the standard fees on the fee schedules are excessive and the trustee is liable for punitive damages;

i.    whether Northern Trust violated its fiduciary duties if it charged tax return preparation fees it should not have;

j.    whether the taking of the Class Action Distribution Charge is compensation for trustee duties that are encompassed by the annual administration fee;

k.    whether the taking of the Class Action Distribution Charge is unlawful, unreasonable, unfair or otherwise a breach of trust;

l.    whether Northern Trust maintains any time or cost records that will support the amount of the Class Action Distribution Service Charges; and

m.    the appropriate remedy, including any declaratory judgment, injunctive relief, restitution, disgorgement, or compensatory and/or punitive damages, for any breach of fiduciary duty.

143.    **Typicality:** Defendants' breaches of fiduciary duty are uniform to all the proposed Class members.

144.    Defendant Northern Trust acts as trustee and administers the putative Class trusts in California and 18 other states under a highly sophisticated computerized system and internal network which results in identical treatment when it comes to the taking of fees.

145.    Plaintiff's claims are typical of those the members of the Class.  Plaintiff's interests are coincident with and not antagonistic of the members of the Class.

146.    Northern Trust's breaches of fiduciary duty alleged herein are both disparate and uniform to the proposed Class members.

147.    In other words, the taking of Class Action Distribution Charges has nothing to do with the overcharges of preparing tax returns, or past inadequate refunds and rebates.

148.    Northern Trust charged extra fees to the Plaintiff and the Class without notice to the beneficiaries and without explaining to the beneficiaries how Northern Trust profited.

149.    Plaintiff's claims are typical of those the members of the Class.  Plaintiff's interests are coincident with and not antagonistic of the members of the Class.

150.    **Fair and Adequate Representation of the Class:** Plaintiff's claims are typical of the claims of the other members of the Class.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  In addition, Plaintiff is represented by counsel who are highly skilled and experienced in the prosecution of complex cases and class actions.  Plaintiff and her counsel are more than capable of fairly and adequately protecting the interests of the Class.

151.    **Superiority of the Class Action Device:** For all the claims, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

152.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

153.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

154.    Treatment as a class action will permit many similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender.

155.    The Class is readily definable and is one for which records should exist in the files of Northern Trust.  The prosecution as a class action will eliminate the possibility of repetitious litigation.  Class treatment will also permit the adjudication of relatively small claims by many members of the Class who are vulnerable to the power that a trustee holds over them.  Many of the trust beneficiaries to the putative class trusts otherwise could not afford to litigate a trust claim such as the ones asserted in this First Amended Complaint.

156.    Plaintiff knows of no unusual difficulty that will be encountered in the management of this action as a class action.

157.    Plaintiff brings this action on her own behalf and on behalf of all persons similarly situated, allowed under Rule 23.

**VI.    PLAINTIFF'S AND THE PUTATIVE CLASS CLAIMS GO BACK TO 2013**

158.    Plaintiff's claims and the claims of the putative Class members go back to 2013, for at least three independent reasons.

159.    First, the tax return preparation fee claims were tolled as a result of the filing of *Banks v. Northern Trust Corporation*, No. 2:16-cv-9141 (C.D. Cal. Dec. 9, 2016).  The *Banks* complaint was a Rule 23 proposed class action filed on December 9, 2016 challenging, among other practices, Northern Trust's tax return preparation fees.  The filing of that complaint tolled the limitations period for all putative class members, including Plaintiff Emerson and the putative Class members here.  *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).  The claims at that point went back 3 to 4 years to December 9, 2013 and December 9, 2012, respectively.

160.    Class certification on the *Banks*' tax return preparation fee claim was denied on December 6, 2019.[7]  Plaintiff Emerson filed her Complaint on November 10, 2022, within three years of December 6, 2019.  Accordingly, due to the tolling mandated by *American Pipe,* Plaintiff and the putative Class claims here go back to December 9, 2013 and December 9, 2012, respectively.

161.    Second, all claims asserted here were tolled as a result of Northern Trust secretly marking up the fees in violation of its fiduciary duties.  Neither Plaintiff nor a putative Class member receiving a statement from Northern Trust listing the tax return preparation fee buried in pages of documents would know, or have reason to suspect, that Northern Trust was marking up the fee and making an undisclosed profit at the trusts' expenses.  Nor would Plaintiff or a putative Class member receiving Northern Trust's form fee schedules know, or have reason to suspect, that Northern Trust was marking up the fee and making an undisclosed profit at the trusts' expenses.

---

[7] A review of the District Court's order denying class certification, which focused primarily on the separate investment claim not part of this case, shows that the denial on the tax return preparation fee claim was grounded on unique factors related to the plaintiffs and their trust.  *See Banks v. N. Tr. Corp.,* No. 16-9141, 2019 WL 8231758 (C.D. Cal. Dec. 6, 2019).

162.     Where a trustee is making an undisclosed, secret profit at the trusts' expense, the statute of limitations will be tolled.  *Henderson v. Bank of N.Y. Mellon*, 332 F.Supp.3d 419, 434 (D. Mass. 2018).  In *Henderson*, which also challenged a tax return preparation fee as being an unlawful markup, the court held that the statements and other disclosures of the tax return preparation fee "were not sufficient to put a reasonable person on actual or constructive notice of the tax-preparation markup. In other words, a rational fact-finder could readily conclude that neither plaintiff knew or reasonably should have known that the tax-preparation fee included the markup now complained of." *Id.*

163.     Similarly, a reasonable beneficiary receiving Northern Trust's statements or fee schedules would not know or have reason to suspect that Northern Trust is secretly marking up the fees.  To the contrary, in its form communications which include fee schedules, Northern Trust has been consistent in its message to Plaintiff and the putative Class that the fees are not only reasonable but necessary.  Further, because the basis for the tax preparation fee is not even explained to the administrative officers that handle the account, even they are in the dark and unable to answer any question beyond what is on the fee schedule.  For these reasons, neither the Plaintiff or putative Class members were on notice or knew or should have known that these fees were unreasonable.

164.     The amount of the fee is set by Global Tax Services which is an entity that is part of NTCORP and not Northern Trust.  As part of its business plan NTCORP does not create any records that contemporaneously (and in detail) document all time, efforts and work performed by Global Tax Services, or Northern Trust as a trustee.  The lack of recordkeeping includes records showing the how much time it takes or costs to prepare a fiduciary return.  Plaintiff does allege however that to the extent any junior personnel "work" on the returns, their rate of hourly pay is so low as to be *de minimus* but this is withheld from the Plaintiff and the putative Class.

165.     Plaintiff, the putative Class, the trust officers that administer the account have all been in the dark.  NTCORP is preventing investigation of this issue by refusing to keep any time or cost records related to the preparation of a routine fiduciary tax return.

166.     Plaintiff does not contend that any tax return preparation fee is by itself unlawful.

Rather, Plaintiff contends that these standard tax return preparation fees implemented by Northern Trust in this case pursuant to fee schedules imposed on the Class trusts are unlawful overcharges because Northern is marking up the standard fees and making an undisclosed profit in violation of its fiduciary duties. Thus, the mere listing of a tax return preparation fee on a statement or fee schedule does not place any reasonable beneficiary on notice that Northern Trust is engaging in self-dealing.

167.    The statements contain many pages of lines of information, one of which are the challenged fees. The fee schedules simply list the standard fees. No reasonable beneficiary would know based on these disclosures that Northern Trust was making an undisclosed profit based on its hidden markup of the fees.

168.    Additionally, a reasonable beneficiary receiving Northern's Trust's statements or fee schedules would not know or have reason to know that Northern Trust has outsourced much of the tax preparation work to overseas entities. There is nothing on these statements or fee schedules that would cause a reasonable beneficiary to suspect that the tax return preparation work had been offshored. Instead, a reasonable beneficiary is led to believe based on these statements and fee schedules that all of the tax return preparation work is being done in the United States.

169.    Third, all claims asserted here were tolled as a result of Northern Trust engaging in a continuing course of conduct of charging tax return preparation fees and Class Action Distribution Charges which, to this day, has not ended. The acts and omissions alleged throughout this First Amended Complaint, including, but not limited to, the continued charging of tax return preparation fees and Class Action Distribution Charges has been ongoing and continues to the present, July 2023, with no foreseeable end.

**VII.  CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
**(Class Claims and Individual Claims--Breach of Fiduciary Duty as to the Tax Return Preparation Fee Claims)**

170.    Plaintiff incorporates and re-alleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows.

171.    A national bank acting as a professional trustee has strict duties requiring it to be honest, prudent, and loyal, and to place the interests of the beneficiaries before its own.  *Moeller v. Superior Court*, 16 Cal.4th 1124, 1132 (1997); *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (Cardozo, J.); Restatement Third, Trusts §78.  These basic trust law principles are consistent across the states.  Cal. Prob. Code §§16002(a), 16004, 16040(a), 16045 and 16047; Uniform Prudent Investor Act, Section 5 and Comment; Prudent Investor Rule (Restatement of Trusts 3d §227).

172.    A trustee has a duty of loyalty "to administer the trust solely in the interest of the beneficiaries," Cal. Prob. Code §16002(a), and to avoid conflicts of interests, Cal. Prob. Code §16004.  This duty prohibits any trustee, small and especially large, from self-dealing in the management of trust assets and from engaging in conflict-of-interest transactions adverse to beneficiaries' interests.

173.    A trustee also has a duty to prudently administer the trusts, Cal. Prob. Code §16040(a), including following the Uniform Prudent Investor Act, Cal. Prob. Code §§16045, 16047, 16050.

174.    Corporate trustees are held to a greater standard of care.  *Matter of Collins' Estate*, 72 Cal.App.3d 663, 673 (1977).

175.    Essential to the duties of loyalty and prudent administration is the duty to be transparent about the fees and costs charged.  *See, e.g.*, *Menzel v. Salka*, 179 Cal.App.2d 612, 621-23 (1960); Restatement Third, Trusts §83.  A trustee must administer a trust according to its trust instrument and the laws of trusts, *see* Cal. Prob. Code §16001, and may only incur appropriate and reasonable costs. *See* Cal. Prob. Code §16050.

176.    Overcharging and self-dealing is a classic breach of trust.  *See Nickel v. Bank of Am. Nat. Trust & Sav. Ass'n*, 290 F.3d 1134, 1138-39 (9th Cir. 2002); *Tavenner v. Talon Grp.*, 2012 WL 6022836, at *4–5 (W.D. Wash. Dec. 4, 2012); *Charters v. John Hancock Life Ins. Co.*, 583 F.Supp.2d 189, 199 (D. Mass. 2008).

177.    A trustee has the power to incur expenses, only if those expenses are appropriate and benefit the trust.  Cal. Prob. Code §§15680, 16050, 16243.  Trustees are under a continuing duty to

account for dealings with trust property and to provide those accountings to the beneficiaries on demand.  *In re Estate of De Laveaga*, 50 Cal.2d 480, 326 P.2d 129, 133 (1958); Cal. Prob. Code §16062.  Beneficiaries must be kept "reasonably informed of the trust and its administration."  Cal. Prob. Code §16060; *see also* Cal. Prob. Code §16061.

178.    When questioned, as here, the trustee must support every item of its account by satisfactory evidence, or the item is disallowed.  *Estate of McCabe*, 98 Cal.App.2d 503, 505-06 (1950); *Purdy v. Johnson,* 174 Cal. 521, 527 (1917).  The trustee is "under an obligation to render to their beneficiaries a full account of all their dealings" with trust property.  *Id.* (citations omitted).

179.    The burden of proof is not on the beneficiaries to point out the particulars where the accounting is erroneous, but on the trustee to render a complete accounting.  *Estate of McLaughlin*, 43 Cal.2d 462, 465-66 (1954); *Purdy*, 174 Cal. at 527.  The trustee must prove the items by sufficiently specific evidence.  *Estate of McCabe*, 98 Cal.App.2d at 505.  The court must scrutinize the trustee's accounts "and any doubt arising from [the trustee's] failure to keep proper records, or from the nature of the proof they produce, must be resolved against them."  *Id.*

180.    The trustee continues to have the burden of proof when it seeks compensation for "extraordinary services."  *Estate of Fulcher*, 234 Cal.App.2d 710, 718 (1965).  The trustee must show in detail that the time and effort involved is "over and beyond usual and ordinary services."  *Estate of Bissinger*, 60 Cal.2d 756, 771 (1964).  If no such showing is made, an award "cannot stand." *Id.*

181.    Further, the California Supreme Court articulated factors considered to determine the reasonableness of a trustee's fee: "'the success or failure of the administration of the trustee; any unusual skill or experience which the trustee in question may have brought to his work; the fidelity or disloyalty displayed by the trustee; the amount of risk and responsibility assumed; the time consumed in carrying out the trust; the custom in the community as to allowances to trustees by settlors or courts and as to charges exacted by trust companies and banks; the character of the work done in the course of administration, whether routine or involving skill and judgment; [and] any

estimate which the trustee has given of the value of his own services . . . .'" *Estate of McLaughlin,* 43 Cal.2d at 468 (citations omitted).

182.    These long-standing universal legal propositions are not diminished because the modern trustee is oftentimes a large corporate fiduciary centrally administering thousands of trusts. Thus, when the trustee makes assessments against trust assets, the trustee's charges must be reasonable, and the trustee bears the burden to maintain records justifying these assessments.

183.    A trustee who violates its fiduciary duties is liable for breach of trust. Cal. Prob. Code §16400.

184.    At all relevant times Northern Trust, as the corporate trustee of the affected trusts, was in a fiduciary relationship with Plaintiff and the members of the proposed Class.

185.    Defendants make huge profits from administering personal trusts.

186.    Defendant has a published fee schedule which provides for fees in return for administering the class trusts and investing trust assets.

187.    Defendants earn a handsome profit without the additional improper charges of tax return preparation fees and class action distribution service charges.

188.    Under the terms of the putative class trusts, the trust beneficiaries have no control over the hiring of anyone but Northern Trust to prepare thousands of tax returns.

189.    Northern Trust breached its fiduciary duties to Plaintiff and the members of the proposed Class by failing to disclose how much the offshore employees cost and how much the trustee unlawfully marked up the fee.

190.    Northern Trust, who is already compensated for its trustee duties through a management fee, breached its fiduciary duties to Plaintiff and the members of the proposed Class by charging an additional and excessive fee pursuant to a fee schedule for routine tax return preparation, a core fiduciary duty of a trustee.

191.    Northern Trust breached its fiduciary duties to Plaintiff and the members of the proposed Class by charging this additional and excessive tax return preparation fee pursuant to a fee schedule which bears no relation to the amount of work required or costs incurred.

192.    Northern Trust breached its fiduciary duties to Plaintiff and the members of the proposed Class by failing to keep any records justifying the additional tax return preparation fees assessed against trust assets.

193.    Northern Trust breached its fiduciary duty to Plaintiff and the members of the proposed Class by failing to properly administer the trust.

194.    Northern Trust's continuing policy and acts set out above was and is a breach of its duty of prudent administration and the duty of loyalty.

195.    As a proximate result of said breaches of fiduciary duty, Plaintiff and every proposed Class member has sustained damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Class Claims and Individual Claims--Accounting as to the Tax Preparation Fee Claim)

196.    Plaintiff incorporates and re-alleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows.

197.    Plaintiff and the members of the proposed Class are the beneficiaries of trusts that are managed by Northern Trust as a trustee.

198.    Northern Trust owes Plaintiff and the members of the proposed Class a fiduciary duty.  As such, Plaintiff and members of the proposed Class are entitled to an equitable accounting.

199.    Due to that fiduciary relationship, Northern Trust owes an obligation to Plaintiff and members of the proposed Class to provide an accounting of their trust accounts as to the tax return preparation fees including, but not limited to, disclosure of the amount of the tax return preparation fees charged, the contract with any third party who assists in preparing the tax returns, the time spent preparing the tax returns, when and why any related tax preparation fees were collected and how much the fees that the trustee collected exceeded the amount of the cost.

200.    Further, an additional basis to order an accounting is that this request for an accounting is incidental to Plaintiff's demand for equitable relief sought forth in this First Amended Complaint.

201.    Accordingly, and as a matter of equity, it is necessary and appropriate for this Court to order an accounting of the trust accounts of Plaintiff and members of the proposed Classes.

### THIRD CAUSE OF ACTION
**(Class Claims and Individual Claims—Unjust Enrichment/Quasi-Contract/Restitution as to the Tax Preparation Fee Claim)**

202.    Plaintiff incorporates and re-alleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows.

203.    As a result of the misconduct alleged herein, Defendants unjustly received a benefit at the expense of Plaintiff and members of the proposed Class.

204.    That benefit consists primarily of the tax return preparation fees that Defendants unjustly obtained from the trusts they supposedly owed the highest fiduciary duties to.

205.    Defendants retain financial benefits, such that it would be unjust to allow Defendants to retain such benefits.

206.    These financial benefits, as well as intangible benefits, were obtained from their misconduct as alleged herein, and it would unfair and unjust to allow Defendants to retain without providing compensation to Plaintiff and the members of the proposed Class.

207.    Plaintiff is informed and believes that an adequate remedy at law may not exist for Plaintiff and members of the proposed Class.

208.    Plaintiff and members of the proposed Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Defendants from their breaches of fiduciary duties.

### FOURTH CAUSE OF ACTION
**(California Unfair Competition Law as to the Tax Return Preparation Fee and Class Action Settlement Distribution Service Charge Claims)**

209.    Plaintiff incorporates and re-alleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows.

210.    The California Unfair Competition Law, Business and Professions Code §17200, prohibits, among other conduct, unlawful and unfair business practices.

211.    The Unfair Competition Law and the relevant trust laws across the country provide that a Court may order injunctive relief and restitution as remedies for any violation of the Act.

212.    Plaintiff brings this cause of action as to both claims here that are ongoing: (a) charging an unlawful tax preparation fee; and (b) charging an artificial class action processing fee styled as a distribution charge.

213.    The business acts and practices of Defendants as hereinabove described, constitute an unlawful business in violation of the Unfair Competition Law due to the violations of the duties under the California Probate Code, as described in this First Amended Complaint.

214.    The business acts and practices of Defendant as hereinabove described, constitute an unfair business in violation of the Unfair Competition Law in that such acts and practices violate California law, are unfair and are otherwise substantially injurious to consumers and offensive to established California public policy.  Under either the public policy tethering or balancing standard, the business acts and practices are "unfair" in violation of the Unfair Competition Law.

215.    Under the public policy tethering standard, as set forth throughout this First Amended Complaint, the California Legislature has identified a policy of strict requirements for a trustee set forth in the Probate Code.  *See* Cal. Prob. Code, Div. 9, Pt. 4.  These are not isolated or vague requirements placed on a trustee, but rather a detailed legislatively declared series of duties and requirements mandating that a trustee be honest, prudent, and loyal, and to place the interests of the beneficiaries before its own.  Cal. Prob. Code §§16002(a), 16004, 16040(a), 16045 and 16047. These detailed legislatively declared policies include those relating to the trustee's duties in general (Cal. Prob. Code §§16000-16015), the trustee's standard of care (Cal. Prob. Code §§16040-16042), the duties under the Uniform Prudent Investor Act (Cal. Prob. Code §§16045-16054), the duties to report information and account to beneficiaries (Cal. Prob. Code §§16060-16069), and duties with regard to discretionary powers (Cal. Prob. Code §§16080-16082).  This legislative policy constraining the power of a trustee also includes a trustee's liability to the beneficiaries.  *See* Cal. Prob. Code, Div. 9, Pt. 4, Ch. 4 (Cal. Prob. Code §§16400-16465).  The allegations of trustee fiduciary breaches are directly tethered to that legislature-declared policy.

216.    Under the balancing standard, a trustee taking excessive fees from trust assets it manages in violation of its fiduciary duties is substantially injurious to the beneficiaries.  Further,

there is no utility in such fee seizing practices that counterbalances those practices.  Taking excessive and unearned fees from trust assets over which it has complete control necessarily means there are less funds available for the trust beneficiaries.

217.    Plaintiff's trust has suffered injury in fact and an economic loss as described in this First Amended Complaint.  Unless restrained and enjoined, Defendants will continue in the acts and practices alleged above.

218.    Accordingly, the Court must issue an injunction restraining and enjoining Defendants from engaging in the acts and practices alleged above.  Plaintiff further requests an order restoring to Plaintiff and members of the putative Classes any money or property, real or personal, which has been lost by means of Defendants' unfair and deceptive business practices.

219.    In addition, pursuant to California Code of Civil Procedure §1021.5, Plaintiff is entitled to recover reasonable attorneys' fees, costs and expenses incurred in bringing this action.

### FIFTH CAUSE OF ACTION
**(Class and Individual Claims--Breach of Fiduciary Duty as to the Class Action Settlement Distribution Service Charges)**

220.    Plaintiff incorporates and re-alleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows.

221.    At all relevant times Northern Trust, as the corporate trustee of the affected trusts, was in a fiduciary relationship with Plaintiff and the Fallgren Trust and the members of the proposed Class.

222.    The Defendants make huge profits from administering personal trusts through their trust administration fees.

223.    As trustee, Northern Trust had the power and responsibility to administer the trust assets in the best interests of the trust beneficiaries, and not itself.

224.    Northern Trust breached its fiduciary duty to Plaintiff and the members of the proposed Class by assessing against trust assets Class Action Distribution Charges, including the Fallgren Trust being charged $25.00.

225.    The duties associated with depositing a class action settlement do not differ from any

other deposit, which are part of the normal administration of the trust.

226. Instead of merely depositing cash or benefits from class actions for no additional fee, Northern Trust has created a profit center.

227. Plaintiff is informed and believes that Northern Trust spends little time and cost in monitoring class action settlements, filing claims, and making deposits of class action settlements into trust accounts.

228. Plaintiff is informed and believes that Northern Trust uses highly automated computerized systems to accomplish these minimal administrative duties.

229. These duties are part of the basic trust administration duties for which Northern Trust already receives compensation through its annual trust administration fee.

230. That class action settlements may not be deposited each year into a trust account does not take the duties out of normal trust administration. Under trust law, a duty does not have to occur each year in order for it to rise to the level of ordinary and usual trust administration.

231. The Class Action Distribution Charge is not related to any actual charges that Defendants incur respective to Plaintiff's or the other putative Class action members' trusts.

232. The factors under *Estate of McLaughlin,* 43 Cal.2d at 468, also establish that this is an unreasonable fee in breach of Northern Trust's fiduciary duties. This includes, but is not limited to, that no unusual skill or experience is required to monitor class actions, file claim forms, and deposit class action settlements into trust accounts. Plaintiff alleges throughout this First Amended Complaint that Northern Trust is engaged in disloyalty through its two unlawful overcharges, including this charge. There is little to no risk assumed by Northern Trust in monitoring class actions, filing claims, and depositing settlements. Given the highly automated nature of this duty, there is little time consumed in carrying out this duty. Northern Trust has not established charging an extra fee for monitoring class actions, filing claims, and depositing settlements is the custom in the trust community. Monitoring class actions, filing claims, and depositing settlements is routine and does not involve any skill or judgment.

233.    Additionally, the Class Action Distribution Charge is not an "extraordinary service" for which additional compensation over and above the trust administration fee is allowed.

234.    The trustee has the burden of proof when it seeks compensation for "extraordinary services." *Estate of Fulcher*, 234 Cal.App.2d at 718.  The trustee must show in detail that the time and effort involved is "over and beyond usual and ordinary services." *Estate of Bissinger*, 60 Cal.2d at 771.  If no such showing is made, an award "cannot stand." *Id.*

235.    Northern Trust is unable to meet its burden of showing that the Class Action Distribution Charge is an "extraordinary service."  Northern Trust has not shown in detail the time and effort involved in monitoring class actions, filing claims, and depositing class action settlement checks is over and beyond usual and ordinary services for administering a trust.  It is not.  It is a basic duty of trust administration.

236.    As a proximate result of said breaches of fiduciary duty, Plaintiff and every proposed Class member has sustained damages in an amount to be proven at trial.

237.    Defendant has been unjustly enriched through the collection of these fees and under trust law continues to hold these monies in a constructive trust for the Class and the Fallgren Trust.

## SIXTH CAUSE OF ACTION
### (Class and Individual Claims—Accounting as to the Class Action Settlement Distribution Charge)

238.    Plaintiff incorporates and re-alleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows.

239.    Plaintiff and the members of the proposed Class are the beneficiaries of trusts that are managed by Northern Trust as a trustee.

240.    Northern Trust owes Plaintiff and the members of the proposed Class a fiduciary duty.  As such, Plaintiff and members of the proposed Class are entitled to an equitable accounting.

241.    Due to the fiduciary relationship, alleged herein, Northern Trust owes an obligation to Plaintiff and members of the proposed Class to provide an accounting of their trust accounts as to the class action settlement distribution charges including, but not limited to, disclosure of the amount of the Class Action Settlement Distribution Charges assessed, the contract with any third party who

assists in this process, the cost of processing class action settlement distributions, the time spent processing class action settlement distributions, when and why any related fees were collected and how much the fees that the trustee collected exceeded the amount of the cost.

242.    Further, an additional basis to order an accounting is that this request for an accounting is incidental to Plaintiff's demand for equitable relief sought forth in this First Amended Complaint.

243.    Accordingly, it is necessary and appropriate for this Court to order an accounting of the trust accounts of Plaintiff and members of the proposed Class.

SEVENTH CAUSE OF ACTION

**(Class Claims and Individual Claims—Unjust Enrichment/Quasi-Contract/Restitution as to the Class Action Settlement Distribution Charges Claim)**

244.    Plaintiff incorporates and re-alleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows.

245.    As a result of the misconduct alleged herein, Defendants unjustly received a benefit at the expense of Plaintiff and members of the proposed Class.

246.    That benefit consists primarily of the class action settlement distribution charges that Defendants unjustly obtained from the trusts they supposedly owed the highest fiduciary duties to.

247.    Defendants retain financial benefits, such that it would be unjust to allow Defendants to retain such benefits.

248.    These financial benefits, as well as intangible benefits, were obtained from their misconduct as alleged herein, and it would unfair and unjust to allow Defendants to retain without providing compensation to Plaintiff and the members of the proposed Class.

249.    Plaintiff is informed and believes that an adequate remedy at law may not exist for Plaintiff and members of the proposed Class.

250.    Plaintiff and members of the proposed Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Defendant from its breaches of fiduciary duties.

**EIGHTH CAUSE OF ACTION**
**(Class Claims and Individual Claims—Financial Elder Abuse as to All Claims)**

251.    Plaintiff incorporates and re-alleges each of the foregoing paragraphs, as though fully set forth herein and further alleges as follows.

252.    Plaintiff is an elder and dependent on Defendants to act prudently, and with complete candor.

253.    As a person dependent on the funds in the Fallgren Trust, Plaintiff, on behalf of herself and the other similarly situated elderly beneficiaries alleges that the trustee Northern Trust violated the Elder Abuse and Dependent Adult Civil Protection Act ("the Act") by taking financial advantage of Plaintiff, elderly trust beneficiaries and all other similarly situated elderly class members subject to the statute.

254.    Northern Trust was aware that as a company it was administering trusts for the elderly and those with medical needs.

255.    It is also aware that these elderly are unaware of what the trustee is doing and trusts them to act solely in their interests.

256.    Defendant Northern Trust trustee misappropriated trust assets for its own use and in so doing made unlawful profits.

257.    Northern Trust did not maintain standard and reasonable records supporting the legal or factual basis for the taking of the tax return preparation fees.

258.    Northern Trust did not maintain standard and reasonable records supporting the legal or factual basis for the taking of the Class Action Settlement Distribution Charges.

259.    Northern Trust has failed to account and provide fair and appropriate remedies as pled herein.

260.    The non-trustee Defendants worked with and were aware of the activities of the affiliated trustee Northern Trust and assisted the Northern Trust in an overall plan to administer the trusts in a fashion which misappropriated trust assets and/or otherwise damaged those trusts where elders are the beneficiaries.

261.    Plaintiff in this action is over 65 years of age and relies on the trust for income.

1    262.    The Fallgren Trust and all others similarly situated have been harmed.

2    263.    The policies and practices of Defendants were a substantial factor in causing

3    Plaintiff's and the class members' harm.

4    264.    Plaintiff can prove that Defendants had a policy of administering the trusts in a

5    fashion that was imprudent and did not meet a corporate fiduciary's standard of care in

6    recordkeeping and administration.

7    265.    Northern Trust's conduct that "silence is deemed acquiescence" also violates the Act.

8    266.    Defendants' administration of these trusts has been imprudent, disloyal, conflicted

9    and unlawful.

10   267.    Defendants knew and should have known or knew that these actions were likely to be

11   harmful to the financial interests of the trusts.

12   268.    Plaintiff and the class members were deprived of the use of the trust assets as a result

13   of the manner in which the trustee held their property.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and all others similarly situated, demands

judgment against Defendants, jointly and individually, as follows:

1.    For certification of this action as a class action with Plaintiff selected as the representative of the Class and their counsel as Class counsel.

2.    For injunctive relief prohibiting Defendants from continuing to engage in or resuming the unlawful or unfair business policy practices described in this First Amended Complaint.

3.    For compensatory damages in an amount sufficient to fully compensate for all harm caused by Defendants, including any damages suffered when trust funds in the form of fees have been improperly taken from a trust account.

4.    For an accounting.

5.    For disgorgement of fees.

6.    For an accounting of each of the Class Trusts.

7.    For restitution for the monies that Defendants unjustly reaped from Plaintiff and each Class member.

8.    For a constructive trust on the assets of Plaintiff and each Class member which Defendants have wrongfully withheld.

9.      For punitive damages as allowed under the law and in equity.

10.     For pre-judgment and post-judgment interest at the maximum rate allowable by law.

11.     For costs of suit, including reasonable attorneys' and experts' fees.

12.     For such other and further relief as the Court may find just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury as to all issues so triable on behalf of Plaintiff and the Classes.

Dated:  July 5, 2023

*/s/ Thomas J. Brandi*                          */s/Derek G. Howard*

Thomas J. Brandi                               Derek G. Howard
Brian J. Malloy                                Ashley M. Romero
**THE BRANDI LAW FIRM**             **DEREK G. HOWARD LAW FIRM**

*Attorneys for Plaintiff and the Putative Classes*