THE BRANDI LAW FIRM
Thomas J. Brandi (CA Bar No. 53208)
tjb@brandilaw.com
Brian J. Malloy (CA Bar No. 234882)
bjm@brandilaw.com
354 Pine Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 989-1800
Facsimile: (415) 989-1801

DEREK G. HOWARD LAW FIRM, INC.
Derek G. Howard (CA Bar No. 118082)
derek@derekhowardlaw.com
Ashley M. Romero (CA Bar No. 286251)
ashley@derekhowardlaw.com
42 Miller Avenue, Mill Valley, CA 94941
Telephone: (415) 432-7192
Facsimile: (415) 524-2419

*Attorneys for Plaintiff Chandler Emerson*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| CHANDLER EMERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHERN TRUST CORPORATION AND NORTHERN TRUST COMPANY,<br><br>Defendants. | Case No.: 3:23-cv-00241-TLT<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:          October 24, 2023<br>Time:          2:00 p.m.<br>Courtroom:  9 – 19th Floor<br>The Hon. Trina L. Thompson<br><br>Action Filed:  November 10, 2022 |

# TABLE OF CONTENTS

I.   Introduction and Summary of Argument ............................................................... 1

II.  Issues to be Decided............................................................................................... 2

III. Procedural History ................................................................................................. 3

    A.  The June 20, 2023 Order on Defendants' Motion to Dismiss the Original Complaint........ 3

    B.  Plaintiff's FAC Adding Substantially More Facts Addressing the Issues Identified by the Court's June 20 Order................................................................................ 3

IV.  Legal Argument ..................................................................................................... 4

    A.  The FAC Plausibly States a Claim for Breach of Fiduciary Duty Based on the Additional Class Action Distribution Charge .......................................................... 4

        1.  The Law Applicable To Whether A Trustee Breaches Its Fiduciary Duty .................. 4

        2.  Facts Added to the FAC Regarding the Class Action Distribution Charge ................. 5

        3.  The FAC Plausibly Alleges a Breach of Fiduciary Duty Claim................................... 7

        4.  The FAC Plausibly Alleges Northern Cannot Justify the Class Action Distribution Charge As an "Extraordinary Service" Under Trust Law........................ 9

    B.  All of Plaintiff's Claims Are Tolled to 2013................................................................ 10

        1.  All Claims Are Tolled Under the Discovery Rule....................................................... 11

            a.   The Law On the Discovery Rule For Claims Against A Trustee........................... 11

            b.   The FAC's New Allegations of Northern Secretly Marking Up the Fees and Representing the Increase Is Necessary Plausibly Invoke the Discovery Rule ..... 12

        2.  All Claims Are Tolled Under the Continuing Violation Doctrine .............................. 16

        3.  The Tax Return Preparation Fee Claims Are Tolled Under Class Action Tolling Authority........................................................................................................ 17

    C.  The FAC Plausibly Alleges UCL Unfair, Accounting, and Unjust Enrichment/Quasi-Contract/Restitution Claims.................................................... 18

        1.  UCL ........................................................................................................................... 18

        2.  Accounting ................................................................................................................ 20

        3.  Unjust Enrichment/Quasi-Contract/Restitution ........................................................ 22

D.  The FAC's New Facts Plausibly Allege Claims Against NTCORP ................................... 23

E.  If the Court Grants Defendants' Motion, Plaintiff Requests Leave to Amend................... 25

V.  Conclusion ................................................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>CASES</u>

3     American Pipe & Construction Co. v. Utah
          414 U.S. 538 (1974) ................................................................................................2, 17
4

5     Aryeh v. Canon Business Solutions, Inc.
          55 Cal.4th 1185 (2013) ...............................................................................................16
6

7     Ashcroft v. Iqbal
          556 U.S. 662 (2009) ...................................................................................................... 4
8

9     Barrett v. Apple Inc.
          523 F.Supp.3d 1132 (N.D. Cal. 2021) ....................................................................... 22

10    Bell Atlantic Corp. v. Twombly
          550 U.S. 544 (2007) ...................................................................................................... 4
11

12    Bennett v. Hibernia Bank
          47 Cal.2d 540 (1956) ................................................................................................... 12
13

14    Birschtein v. New United Motor Manufacturing, Inc.
          92 Cal.App.4th 994 (2001) .......................................................................................... 16
15    Day v. Greene
          59 Cal.2d 404 (1963) ................................................................................................... 23
16

17    El Pollo Loco, Inc. v. Hashim
          316 F.3d 1032 (9th Cir. 2003) ..................................................................................... 11
18

19    Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.
          122 Cal.App.3d 834 (1981) ......................................................................................... 12

20    Estate of Bissinger
          60 Cal.2d 756 (1964) ..................................................................................................... 9
21

22    Estate of Fulcher
          234 Cal.App.2d 710 (1965) ........................................................................................... 9
23

24    Focus 15, LLC v. NICO Corp.
          No. 21-cv-01493-EMC, 2022 WL 267441, (N.D. Cal. Jan. 28, 2022) ..................... 17
25

26    Hatfield v. Halifax PLC
          564 F.3d 1177 (9th Cir. 2009) ..........................................................................2, 17, 18

27    Henderson v. Bank of N.Y. Mellon
          332 F.Supp.3d 419 (D. Mass. 2018) ........................................................................... 15
28

In re McLaughlin's Estate
    43 Cal.2d 462 (1954) .......................................................................................... *passim*

Jablon v. Dean Witter & Co.
    614 F.2d 677 (9th Cir. 1980) ..................................................................................... 10

Knievel v. ESPN
    393 F.3d 1068 (9th Cir. 2005) ..................................................................................... 4

McGill v. Citibank, N.A.
    2 Cal.5th 945 (2017) ................................................................................................... 20

Meinhard v. Salmon
    164 N.E. 545 (N.Y. 1928) (Cardozo, J.) ................................................................. 12

Menzel v. Salka
    179 Cal.App.2d 612 (1960) ...................................................................................... 12

Moeller v. Superior Court
    16 Cal.4th 1124 (1997) .............................................................................................. 12

Navarro v. Block
    250 F.3d 729 (9th Cir. 2001) ...................................................................................... 4

Park v. Thompson
    851 F.3d 910 (9th Cir. 2017) .................................................................................... 10

Richards v. CH2M Hill, Inc.
    26 Cal.4th 798 (2001) ................................................................................................ 16

Rivera v. BAC Home Loans Servicing, L.P.
    756 F.Supp.2d 1193 (N.D. Cal. 2010)................................................................... 21

Supermail Cargo, Inc. v. United States
    68 F.3d 1204 (9th Cir. 1995) ............................................................................. 10, 11

Tawfik v. JP Morgan Chase Bank, N.A.
    No. 20-cv-02946-JSC, 2020 WL 5074398, (N.D. Cal. Aug. 26, 2020) ................... 17

Towers v. Titus
    5 B.R. 786 (N.D. Cal. 1979) .................................................................................... 21

United States v. Bestfoods
    524 U.S. 51 (1998)................................................................................................ 23, 24

United States v. Corinthian Colleges
    655 F.3d 984 (9th Cir. 2011) .................................................................................... 25

# STATUTES

California Business and Professions Code
    § 17203 ................................................................................................................20

California Probate Code
    Division 9, Part 4 ................................................................................................ 19
    § 15002 ................................................................................................................23
    § 15681 ............................................................................................................. 4, 8
    §§ 16000-16015 ....................................................................................................19
    § 16002(a) ............................................................................................................19
    § 16004 ................................................................................................................19
    §§ 16040-16042 ..................................................................................................19
    § 16040(a) ............................................................................................................19
    §§ 16045-16054 ..................................................................................................19
    § 16045 ................................................................................................................19
    § 16047 ................................................................................................................19
    § 16050 ............................................................................................................. 4, 8
    §§ 16060-16069 ..................................................................................................19
    § 16062(a) ............................................................................................................12
    §§ 16080-16082 ..................................................................................................19
    §§ 16400-16465 ..................................................................................................19
    § 16400 ............................................................................................................. 4, 8
    § 16420 ............................................................................................................20, 23
    § 16460(a)(2) ........................................................................................................12

# OTHER AUTHORITIES

Federal Rules of Civil Procedure
    Rule 12(b)(6)........................................................................................ 1, 4, 11, 25
    Rule 15(a)(2) ........................................................................................................ 25

June 20, 2023 Order (ECF No. 34) ...................................................................... *passim*

Restatement Third, Trusts
    §78 ......................................................................................................................12
    §83 ......................................................................................................................12

# I.  Introduction and Summary of Argument

The Court's June 20, 2023 Order denied Defendants Northern Trust Company ("Northern") and Northern Trust Corporation's ("NTCORP") (together, "Defendants") Fed. R. Civ. P. 12(b)(6) motion to dismiss Plaintiff Chandler Emerson's ("Plaintiff") breach of fiduciary duty claim (tax return preparation fee); the Unfair Competition Law unlawful claim (tax return preparation fee); and violation of the Financial Elder Abuse Act (tax return preparation fee).  (ECF No. 34.)  The June 20 Order granted the motion as to the remainder of the claims, including all claims relating to the Class Action Distribution Charge, and held the facts as pled were insufficient to toll the limitations period to 2013 from 2018/2019.  In so holding, the Court also outlined the trust law governing a trustee's fiduciary duties, the trust law applicable to determining whether a fee is reasonable, and why the Court dismissed certain claims with leave to amend.

Plaintiff's First Amended Complaint ("FAC") resolves all of the deficiencies the Court identified.[1]  Northern's motion ignores or mischaracterizes these new facts and avoids discussion of the governing trust law.  On the Class Action Distribution Charge breach of fiduciary claim, the FAC adds substantial material facts demonstrating that this additional fee, which is importantly over and above the annual trust administration fee, is unreasonable given the highly automated nature and the minimal cost, skill and time involved with the task of monitoring and processing on a bulk basis class action settlements.  (*See* new allegations at FAC ¶¶ 15-18, 120, 122, 124-129, 226-235.)  The FAC also adds material facts directly addressing the factors set forth in *In re McLaughlin's Est.*, 43 Cal.2d 462, 468 (1954), which the Court and the parties agree governs whether a fee is reasonable, establishing that at least six of the nine factors warrant a finding of an unreasonable fee.  (FAC ¶ 232.)  The FAC also discusses the law applicable when, as here, a trustee seeks additional compensation for an "extraordinary service," establishing Northern has not met its burden.  The Class Action Distribution Charge breach of fiduciary claim is now plausibly stated.

On the tolling of the statute of limitations from 2018/2019 to 2013, the Ninth Circuit instructs

---

[1] The red-line comparing the Complaint to the FAC which Northern submitted to the Courtroom Deputy on July 6, 2023 is attached to this Opposition.

that a complaint should not be dismissed on statute of limitations grounds unless it appears "beyond doubt" that the plaintiff can prove no set of facts establishing timeliness because equitable tolling is based in large part on matters outside the pleadings.  All claims are tolled under the discovery rule based on the new material facts added.  (FAC ¶¶ 5-13, 161-168.)  The FAC plausibly invokes the discovery rule based on new allegations of (1) Northern's secret markup of fees and then (2) wrongfully telling the beneficiaries in official advisories the fees are necessary.  (FAC ¶¶ 5-13, 161-168.)  Simply listing a fee on a statement and then telling beneficiaries in no uncertain terms that the fees were necessary in no way places a beneficiary on notice that something is awry.  Two other grounds exist for tolling (which are moot if the discovery rule applies):  for all claims, the continuing violation doctrine and for the tax return preparation fee claim, class action tolling doctrines.

For both the tax return preparation fee and Class Action Distribution Charge, on the UCL unfair claims, the accounting claims, and the unjust enrichment/quasi-contract claims, the FAC adds allegations directly addressing the deficiencies identified by the Court.  Finally, as to parent NTCORP, the FAC adds substantially more facts concerning NTCORP's direct role in developing the fees that are the subject of this lawsuit, which rise above the level of normal parental functions.

Defendants' motion should therefore be denied.  To the extent the Court identifies further deficiencies, Plaintiff requests leave to amend.

## II. Issues to be Decided

1.  Whether the new facts added to the FAC on the Class Action Distribution Charge, including facts relevant on the *McLaughlin* factors, plausibly allege a breach of fiduciary duty claim.

2.  Whether it is beyond doubt that the plaintiff can prove no set of facts establishing equitable tolling of the statute of limitations from 2018/2019 to 2013 under the discovery rule based on the additional facts added to the FAC; the continuing violation doctrine; and/or *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) and the twin tolling doctrine expressed in *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1186-89 (9th Cir. 2009).

3.   Whether the FAC resolves the deficiencies the Court identified in its June 20 Order regarding Plaintiff's UCL unfair claims, accounting claims, unjust enrichment/quasi-contract/restitution claims, and claims against NTCORP.

### III.  Procedural History

**A.  The June 20, 2023 Order on Defendants' Motion to Dismiss the Original Complaint**

Plaintiff's Complaint alleged on behalf of herself and putative class members eight claims against Defendants:  breach of fiduciary duty (tax return preparation fee); accounting (tax return preparation fee); unjust enrichment (tax return preparation fee); UCL unlawful and unfair (both fees); breach of fiduciary duty (Class Action Distribution Charge); accounting (Class Action Distribution Charge); unjust enrichment (Class Action Distribution Charge); and violation of the Financial Elder Abuse Act (both fees).  Defendants moved to dismiss all claims.

On June 20, 2023, the Court issued an order granting in part and denying in part Defendants' motion.  (ECF No. 34.)  The Court denied the motion as to the breach of fiduciary duty claim (tax return preparation fee); the UCL unlawful claim (tax return preparation fee); and violation of the Financial Elder Abuse Act (tax return preparation fee).  Those claims are materially unchanged in the FAC and Defendants do not move to dismiss them.

The Court granted the motion as to the breach of fiduciary duty (Class Action Distribution Charge); accounting (both fees); unjust enrichment (both fees); UCL unfair prong (both fees); UCL unlawful prong (Class Action Distribution Charge); and violation of the Financial Elder Abuse Act (Class Action Distribution Charge).  The Court also held that, as pled, the discovery rule would not apply to toll the claims to 2013.  Finally, the Court held that allegations against parent NTCORP were insufficient for any of the claims.  The June 20 Order specifically outlined what the Court felt was insufficient on each of the items for which the motion was granted, and provided Plaintiff until July 5, 2023 to file any amended complaint.

**B.  Plaintiff's FAC Adding Substantially More Facts Addressing the Issues Identified by the Court's June 20 Order**

Plaintiff filed the FAC on July 5.  (ECF No. 39.)  As set forth in the attached red-line version and detailed below, the FAC addresses with substantially more factual allegations the concerns raised by the June 20 Order for each of the claims for which the motion was granted, tolling the limitations period to 2013, and the claims against NTCORP.  To not be repetitive, Plaintiff discusses the new facts in the Legal Argument section under the discussion of each respective claim/issue.

1

### IV.  Legal Argument

2      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro*

3  *v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).  The standards are well-established.  The allegations in a

4  complaint must rise above the level of speculation, but need only "raise a reasonable expectation that

5  discovery will reveal evidence of" a basis for liability.  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

6  554, 556 (2007).  Further, to survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need

7  detailed factual allegations."  *Id.* at 555.  To state a plausible claim, a plaintiff need only plead

8  "factual content that allows the court to draw the reasonable inference that the defendant is liable for

9  the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at

10  556).  All factual allegations are accepted as true and construed in the light most favorable to the

11  plaintiff.  *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005).

12      **A.  The FAC Plausibly States a Claim for Breach of Fiduciary Duty Based on the**

13      **Additional Class Action Distribution Charge**

14          **1.  The Law Applicable To Whether A Trustee Breaches Its Fiduciary Duty**

15      The same breach of fiduciary law applicable to the tax return preparation fee claim applies to

16  the Class Action Distribution Charge.  This Court recognized that " '[a] violation by the trustee of

17  any duty that the trustee owes the beneficiary is a breach of trust.' " (June 20 Order at 4:15-16,

18  quoting Cal. Prob. Code § 16400.)  Further, " '[i]n investing and managing trust assets, a trustee may

19  only incur costs that are appropriate and reasonable in relation to the assets, overall investment

20  strategy, purposes, and other circumstances of the trust.' " (June 20 Order at 4:16-18, quoting Cal.

21  Prob. Code § 16050.)  And, where, as here, "the trust instrument does not specify the trustee's

22  compensation, the trustee is entitled to reasonable compensation under the circumstances."  (June 20

23  Order at 4:18-20, quoting Cal. Prob. Code § 15681.)

24      In assessing the lawfulness of a fee, the Court also discussed the California Supreme Court's

25  *McLaughlin* factors that help determine whether a fee is reasonable.  (June 20 Order at 5:3-4.)

26  Those factors are:

27      (1) "the income of a trust," (2) "the success or failure of the administration of the trustee," (3)
"any unusual skill or experience which the trustee in question may have brought to his

28      work," (4) "the fidelity or disloyalty displayed by the trustee," (5) "the amount of risk and
responsibility assumed," (6) "the time consumed in carrying out the trust," (7) "the custom in

- 4 -

the community as to allowances to trustees by settlors or courts and as to charges exacted by trust companies and banks," (8) "the character of the work done in the course of administration, whether routine or involving skill and judgment," and (9) "any estimate which the trustee has given of the value of his own services."

(June 20 Order at 5:4-12, quoting *In re McLaughlin's Est.*, 43 Cal. 2d at 468.)  In applying these factors, "there is no inflexible rule for measuring the allowance; the question of what a reasonable compensation is depending 'largely upon the circumstances of each particular case.' " (June 20 Order at 5:13-15, citing *In re McLaughlin's Est.*, 43 Cal. 2d at 468 (citation and modification omitted).)  Therefore, "Plaintiff need not allege facts for each of the nine factors at this stage." (June 20 Order at 5:15-16.)[2]

### 2.  Facts Added to the FAC Regarding the Class Action Distribution Charge

The Court found the allegations regarding this claim in the original Complaint to be "sparse." (June 20 Order at 8:5.)  Those allegations were that Northern charges at least $25.00 for a service that is duplicative of the administrative fee, that "[t]he duties associated with depositing a class action settlement do not differ from any other deposit and are part of the normal administration of the trust," and that Plaintiff was charged "at least on October 6, 2020."  (June 20 Order at 8:5-10.)  The Court concluded these were "bare allegations" and that it was not plausible that the fee was for only depositing a class action settlement.  (June 20 Order at 8:11-13.)  Further, in addressing Northern's contention that this fee is alternatively an "extraordinary service," the Court held that based on these bare allegations "it is reasonable to assume that an additional service is above the normal administration of a trust and thus not included in Northern's annual administrative fee." (June 20 Order at 8:14-17.)

The FAC keeps the prior allegations and adds facts establishing in detail all of the parameters of this fee, including the highly automated nature of monitoring class actions, filing claims for settlements, and depositing settlement money, which require minimal cost, skill and time from

---

[2]  The FAC contains a comprehensive discussion of the long-standing trust law principles both in California and nationally on how overcharging trust assets with excessive fees is a breach of a trustee's fiduciary duty.  (*See* FAC ¶¶ 171-183.)  While this legal discussion is in the tax return preparation fee breach of fiduciary duty claim, the same legal principles apply to the overcharges relating to the Class Action Distribution Charge.  Plaintiff incorporates that legal discussion here.

Northern, and further that this fee does not qualify as an extraordinary service under trust law. (*See* new allegations at FAC ¶¶ 15-18, 120, 122, 124-129, 226-235.)

The FAC outlines the nature of this additional charge on top of the annual trust administration fee as being for "ostensibly monitoring class action settlements, filing claim forms, and depositing class action settlements into trust accounts." (FAC ¶ 120.) However, Northern "spends little time and cost in monitoring class action settlements, filing claims, and making deposits of class action settlements into trust accounts." (FAC ¶ 227.) The FAC explains with new facts why. Northern for custodial (pension) accounts "has developed a platform that uses highly automated computerized systems to monitor class action settlements, file claims, and make deposits of class action settlements received. This platform receives and accumulates the necessary class action information and is doing so regardless of obligations first owed to the personal trusts under administration." (FAC ¶ 15; *see also* ¶¶ 124-125.) The FAC alleges that "[w]ithout reaching out, Northern Trust receives the name of the court appointed claims administrators and Northern Trust automatically receives notification of class action settlements as well as other interactive data and information from Mondaq.com." (FAC ¶ 124.)

The existence of this platform for custodial (pension) accounts allows Northern to spend "minimal time and cost in monitoring class action settlements for personal trust accounts, and its actions are limited to filing claims and making deposits of class action settlements into trust accounts and then like any other payment, posting disbursements where appropriate." (FAC ¶ 124.) Moreover, "[a]ll of this work is duplicative of the same asset administration that Defendants provides to its larger custodial clients like pension funds." (FAC ¶125.) However, "[w]ithout adequate notice to Plaintiff and the Class, Northern began to charge personal trusts for the same work, but with an extra fee." (FAC ¶125.) The FAC alleges that "Northern Trust uses highly automated computerized systems to accomplish these minimal administrative duties." (FAC ¶ 126; *see also* ¶ 128.) As such, Northern has turned this into a profit center. (FAC ¶ 226.)

The FAC also explains why the fact that a class action settlement deposit not occurring each year does not take it out of the duties of normal trust administration. (FAC ¶ 230.) Under trust law, a duty does not have to occur each year in order for it to rise to the level of ordinary and usual trust

administration.  (FAC ¶ 230.)  A discussion of facts relating to the *McLaughlin* factors is also added.
(FAC ¶ 232.)

Further, "[t]hese duties, which take little time or effort, are not a basis for additional
compensation.  The duties are part of the basic trust administration duties for which Northern Trust
already receives compensation in the form of its annual trust administration fee.  In recognition of its
duties, for a long period of time, Northern Trust and its predecessors did not charge an additional
Class Action Distribution Charge."  (FAC ¶ 16; *see also* ¶¶ 127, 229.)  And, the duties associated
with depositing the class action settlements are "no different than gathering the requisite records for
dividends or interest on accounts, which is part of routine trustee duties."  (FAC ¶ 122.)  This charge
is not related to any actual charges that Northern incurs and Northern does not keep any records
about the charge that would allow Plaintiff to deduce whether the charge is reasonable.  (FAC ¶¶ 17-
18, 128, 231.)

The FAC also adds facts addressing Northern's alternative argument that the charge is an
"extraordinary service."  The FAC alleges that the charge is "not an 'extraordinary service' for
which additional compensation over and above the trust administration fee is allowed."  (FAC ¶ 129;
*see also* ¶ 233.)  The FAC outlines the law governing when a trustee seeks to meet its burden for an
additional fee for "extraordinary services," including showing that the time and effort involved is
over and beyond usual and ordinary services.  (FAC ¶ 234.)  Northern is unable to meet its burden
because Northern "has not shown in detail the time and effort involved in monitoring class actions,
filing claims, and depositing class action settlement checks is over and beyond usual and ordinary
services for administering a trust."  (FAC ¶ 235.)

Finally, the FAC alleges inadequate disclosure because "[a]side from advising of the taking
of this charge on account statements, Northern Trust has never explained in writing to the
beneficiaries or the Class what the basis is for the fee, much less the amount."  (FAC ¶ 120.)

### 3.  The FAC Plausibly Alleges a Breach of Fiduciary Duty Claim

The FAC addresses the Court's concern about insufficient facts by adding material facts
directly relevant to this charge establishing Northern is charging an extra fee above its annual trust
administration fee for work that is part of the administrative function.  That is, Northern is using a

highly automated system of monitoring class actions, filing claims, and depositing settlements requiring minimal cost, skill and time but charging an extra fee for doing so. (FAC ¶¶ 15-18, 120, 122, 124-129, 226-235.) These facts plausibly establish the Class Action Distribution Charge, assessed over and above the annual administration fee, is not reasonable in breach of Northern's fiduciary duties. (June 20 Order at 4:15-20, discussing Cal. Prob. Code §§ 16400, 16050, and 15681.)

These added facts are directly relevant to the *McLaughlin* factors. (FAC ¶ 232.) The FAC expressly analyzes these new facts against the *McLaughlin* factors, which "also establish that this is an unreasonable fee in breach of Northern Trust's fiduciary duties." (FAC ¶ 232.) Analyzing these factors, the FAC alleges that at least six of the nine leads to a finding of an unreasonable fee: "no unusual skill or experience is required to monitor class actions, file claim forms, and deposit class action settlements into trust accounts. Plaintiff alleges throughout this First Amended Complaint that Northern Trust is engaged in disloyalty through its two unlawful overcharges, including this charge. There is little to no risk assumed by Northern Trust in monitoring class actions, filing claims, and depositing settlements. Given the highly automated nature of this duty, there is little time consumed in carrying out this duty. Northern Trust has not established charging an extra fee for monitoring class actions, filing claims, and depositing settlements is the custom in the trust community. Monitoring class actions, filing claims, and depositing settlements is routine and does not involve any skill or judgment." (FAC ¶ 232.) Northern, by contrast, briefly mentions some of these factors but fails to analyze them in conjunction with these new facts. (Mot. at 13:18-15:25.)

This Court correctly recognized that "Plaintiff need not allege facts for each of the nine factors at this stage." (June 20 Order at 5:15-16.) Given the FAC allegations that at least six of the nine establish an unreasonable fee, a fact finder could similarly conclude. As such, Plaintiff plausibly alleges that the Class Action Distribution Charge is unreasonable under *McLaughlin*..

Further, Northern is wrong that Plaintiff has not identified authority indicating that this task for which Northern seeks additional compensation is part of the trustee's regular duties. (Mot. at 14:24-25.) The authority indicating whether the task of using highly automated software and minimal time to monitor class actions, file claims, and deposit funds is or is not a regular part of the

trustee's duties is first answered by the *McLaughlin* factors.  Those factors necessarily include a discussion of normal trustee duties, such as whether "any unusual skill or experience" is required, "the time consumed in carrying out the trust," and "the character of the work done in the course of administration, whether routine or involving skill and judgment."  (*See* June 20 Order at 5:4-12, quoting *In re McLaughlin's Est.*, 43 Cal. 2d at 468.)  Northern provides no analysis of these new facts against the *McLaughlin* factors.  (Mot. at 13:18-15:25.)

And, the authority discussed immediately below on whether this fee, as Northern suggests, qualifies as an "extraordinary service" is also relevant on whether this task is usual and customary or if instead the trustee is able to show in detail that the time and effort involved is "over and beyond usual and ordinary services."  (FAC ¶ 234, quoting *Estate of Bissinger*, 60 Cal.2d 756, 771 (1964).)

### 4. The FAC Plausibly Alleges Northern Cannot Justify the Class Action Distribution Charge As an "Extraordinary Service" Under Trust Law

Alternatively, the motion justifies this fee at the pleading stage as an "extraordinary service" as a matter of law.  (Mot. at 13:28-14:3.)  This contradicts the pleading.  And, the FAC directly addresses that attempted justification and explains, through new facts, why it is not an "extraordinary service."  (FAC ¶¶ 233-235.)  Northern, in contrast, fails to discuss the law applicable when, as here, a trustee attempts to claim an extra fee for "extraordinary services" nor otherwise explain why the Court should declare as a matter of law that the fee is an "extraordinary service."  (Mot. at 13:18-15:25.)  The Court should reject that attempt to declare the fee "extraordinary" at this stage.

The FAC confronts Northern's alternative argument head-on, alleging that "the Class Action Distribution Charge is not an 'extraordinary service' for which additional compensation over and above the trust administration fee is allowed."  (FAC ¶ 233.)  The FAC discusses the law applicable when a trustee contends a fee is for an "extraordinary service."  (FAC ¶ 234.)  The trustee Northern, not Plaintiff, has the burden of proof when it seeks compensation for "extraordinary services." (FAC ¶ 234, citing *Estate of Fulcher,* 234 Cal.App.2d 710, 718 (1965).)  This requires the trustee to show in detail that the time and effort involved is "over and beyond usual and ordinary services." (FAC ¶ 234, quoting *Estate of Bissinger*, 60 Cal.2d at 771.)  If the trustee is unable to make that showing, an award "cannot stand."  (*Id.*)

1    The FAC then explains with factual detail why Northern cannot meet its burden in showing

2    that the Class Action Distribution Charge is an "extraordinary service." (FAC ¶ 235.) The FAC

3    alleges that "Northern Trust has not shown in detail the time and effort involved in monitoring class

4    actions, filing claims, and depositing class action settlement checks is over and beyond usual and

5    ordinary services for administering a trust." (FAC ¶ 235.) Accordingly, Plaintiff also sufficiently

6    alleges that Northern cannot satisfy its burden of justifying this fee as an extraordinary service.

7    Northern's motion fails to address this authority governing whether a trustee can justify an

8    extra fee as an extraordinary service. At most, given these FAC's allegations, whether the Class

9    Action Distribution Charge qualifies as an "extraordinary service" is an issue to be resolved in later

10   proceedings, not on a pleading motion.

11   Northern's final attempt to dismiss the new facts on this fee is claiming some of the

12   allegations are based on "information and belief" and therefore cannot be considered. (Mot. at 15:1-

13   11.) But the Ninth Circuit expressly *allows* factual allegations based on information and belief so

14   long as those allegations, like any other allegation, are not conclusory. *Park v. Thompson*, 851 F.3d

15   910, 928-929 (9th Cir. 2017). Pleading facts based on "information and belief" is especially

16   warranted where, as here, the facts alleged on information and belief are in the possession of the

17   defendant. *Id.* As shown above, Plaintiff's new allegations concerning this charge are not

18   conclusory but are specific, detailed and in the possession of Defendants.

19   **B. All of Plaintiff's Claims Are Tolled to 2013**

20   Defendants move to dismiss all claims to the extent they go beyond 3 and 4 years from

21   the date of the November 2022 filing of the Complaint. The FAC alleges claims going back to 2013,

22   not just to 2018/2019, based on three separate tolling grounds: for all claims, the discovery rule

23   based on the new facts added; for all claims, the continuing violation doctrine; and for the tax return

24   preparation fee claim, class action tolling doctrines.

25   "A motion to dismiss based on the running of the statute of limitations period may be granted

26   only 'if the assertions of the complaint, read with the required liberality, would not permit the

27   plaintiff to prove the statute was tolled.' " *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204,

28   1206–1207 (9th Cir. 1995) (quoting *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.

- 10 -

1980)).  Further, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Id.* at 1207.  The Ninth Circuit recognizes that "[b]ecause the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.' " *Id.* at 1206 (citation omitted).

### 1.  All Claims Are Tolled Under the Discovery Rule

The FAC adds several material facts establishing that the limitations period for all claims should be tolled to 2013 under the discovery rule.  (FAC ¶¶ 5-13, 161-168.)  Northern argues that the discovery rule does not apply because the subject fees were listed on statements and fee schedules, thereby placing a beneficiary on inquiry notice that Northern engaged in a breach of fiduciary duty. (Mot. at 20:15-19.)  However, the mere statutorily required listing of fees on a statement or fee schedule is not sufficient, by itself, to place a beneficiary on notice that the fee is being marked up in violation of a trustee's fiduciary duties, especially where, as here, Northern is also making opposite representations to the beneficiaries in official advisories that its fees and fee increases are necessary. (FAC ¶¶ 5-13, 161-168.)  Therefore, the FAC's new facts concerning (1) Northern's undisclosed markup of fees and then (2) wrongfully telling the beneficiaries the fees are necessary plausibly invoke the discovery rule at this stage.  Indeed, to the extent that listing a fee on a statement puts a beneficiary on inquiry notice (it does not), Northern's representations that the fees are necessary to continue to provide services smothers any inquiry notice.

### a.  The Law On the Discovery Rule For Claims Against A Trustee

The June 20 Order outlined the elements for application of the discovery rule to toll the statute of limitations.  (June 20 Order at 7:6-12.)  This includes that:  " 'The discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time.' " (June 20 Order at 7:6-9, quoting *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003) (citation omitted).)  In analyzing whether the discovery rule is plausibly pled, it is important to recognize the unique standards governing a trustee's conduct.  A trust-beneficiary relationship is not simply an arms-length commercial relationship.  Instead, a national bank acting as a professional

trustee has strict duties requiring it to be honest, prudent, and loyal, and to place the interests of the beneficiaries before its own. *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (Cardozo, J.); *see also Moeller v. Superior Court*, 16 Cal.4th 1124, 1132 (1997) (extensive powers of trustee).

These duties include the trustee being candid and transparent about the fees it charges to trust assets. Restatement Third, Trusts §§ 78, 83; *Menzel v. Salka*, 179 Cal.App.2d 612, 622-623 (1960). A fiduciary such as a trustee " 'has a duty to make a full and fair disclosure of all facts which materially affect the rights and interest of the parties, and, where a fiduciary relationship exists, facts which would ordinarily require investigation may not excite suspicion.' " *Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.,* 122 Cal.App.3d 834, 855 (1981) (quoting *Bennett v. Hibernia Bank*, 47 Cal.2d 540, 559-560 (1956)). Because of a fiduciary's duty to be completely transparent, when a fiduciary relationship exists, the same degree of diligence is not required to trigger inquiry notice. *Electronic Equipment*, 122 Cal.App.3d at 855.

When, as here, the trustee sends statements or other writings to beneficiaries, California law is clear that a beneficiary's claim does accrue unless adequate disclosures are made:

> If an interim or final account in writing or other written report **does not adequately disclose the existence of a claim against the trustee for breach of trust** or if a beneficiary does not receive any written account or report, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after the beneficiary discovered, or reasonably should have discovered, the subject of the claim.

Cal. Prob. Code § 16460(a)(2) (emphasis supplied). Northern's motion fails to address this Probate Code section concerning the discovery rule for a breach of trust against a trustee.

**b. The FAC's New Allegations of Northern Secretly Marking Up the Fees and Representing the Increase Is Necessary Plausibly Invoke the Discovery Rule**

The FAC's new facts plausibly invoke the discovery rule based on (1) Northern's markup of fees and then (2) wrongfully telling the beneficiaries in official advisories the fees are necessary. (FAC ¶¶ 5-13, 161-168.) Northern is statutorily required to send statements to beneficiaries. *See, e.g.*, Cal. Prob. Code § 16062(a). The documents listing the fees do not provide any reason for the beneficiary to suspect something is wrong. The account statements contain many pages of lines of

information, one of which are the challenged fees. (FAC ¶ 167.) The fee schedules simply list the standard fees. (FAC ¶ 167.)

No communication from Northern put any beneficiary on inquiry notice of a markup in violation of a trustee's fiduciary duty. (FAC ¶¶ 166, 167.) Neither Plaintiff nor a beneficiary receiving a statement from Northern merely "listing the tax return preparation fee buried in pages of documents would know, or have reason to suspect, that Northern Trust was marking up the fee and making an undisclosed profit at the trusts' expenses." (FAC ¶ 161.) Nor would Plaintiff or a beneficiary "receiving Northern Trust's form fee schedules know, or have reason to suspect, that Northern Trust was marking up the fee and making an undisclosed profit at the trusts' expenses." (FAC ¶ 161.) Instead, "[t]he overcharges alleged herein have been assessed pursuant to a fee schedule that only lists a flat amount for the 'Tax Preparation Services.' " (FAC ¶ 5.) Importantly, "[t]here has been no other material information provided to the Plaintiff and the Class, including information that discloses the existence of a potential claim for a violation of the duty of prudent administration, the duty of loyalty, or even a breach of trust." (FAC ¶ 5.)

Not only do the statements and fee schedules simply list the fees, but additional facts added to the FAC reinforce these documents do not put any beneficiary on notice that something is amiss because <u>Northern's representations in official advisories say the fees are necessary, leaving the exact opposite impression</u>. (FAC ¶¶ 5, 7-9, 11.) The FAC alleges that "the 'fee schedule' that Northern Trust sends to the Class during the Class Period is the trustee's official advisory that the trustee considers the fee schedule to be the proper and reasonable amount to charge." (FAC ¶ 5.) The FAC provides two specific examples of form letters and fee schedules with these representations. (FAC ¶¶ 7-8.) One letter states that the fee increase is "[t]o support our commitment to providing the highest level of professional tax services." (FAC ¶ 7.) The other letter claims the fee increase is "to help meet your needs in an evolving financial environment" and "to continue providing the highest level of professional services." (FAC ¶ 8.) The FAC alleges that "every form communication from trustee Northern Trust about the tax return preparation fee advised that the fees were reasonable and necessary and commensurate with the finest trust services available." (FAC ¶ 11.) However, that "unbeknownst to Plaintiff and the putative Class, the amounts listed on the notices and/or fee

schedule and the stated premise for the fee increases were false." (FAC ¶ 9.) There is no reason for any beneficiary to suspect something is wrong when the trustee is representing that the fee increases are necessary so they can provide "the highest level of professional service." (*See* FAC ¶¶ 5, 7-8.)

A fiduciary trustee telling a beneficiary in official advisories that the fees are necessary is the exact opposite of alerting the beneficiaries that the fees were marked up. A fiduciary trustee telling a beneficiary in official advisories that the fees are needed so Northern can continue to provide services is the exact opposite of a communication that should raise a beneficiary's suspicion. So, not only do the statements and fee schedules simply list the fees, but Northern's own representations regarding the fees would lead a reasonable beneficiary to conclude the fees are reasonable.

Northern argues that merely listing a fee puts a beneficiary on inquiry notice of a breach of trust because, Northern asserts, Plaintiff contends any tax return preparation fee is illegal. Contrary to Defendants' argument, Plaintiff never argued that a tax return preparation fee – simply by its name – is unlawful. Defendants cite no provision of the Complaint where that claim is made, and the FAC paragraphs cited do not support that broad statement. (*See* Mot. at 21, fn. 8, citing FAC ¶¶ 3-4, 101-102, 142(a).) To put to rest any doubt, the FAC makes this clear that "Plaintiff does not contend that any tax return preparation fee is by itself unlawful." (FAC ¶ 166.) Instead, the issue with Northern's tax return preparation fee is that these additional fees - now an extra $1,000 - imposed by Northern pursuant to standard fee schedules are inflated and "unlawful overcharges because Northern is marking up the standard fees and making an undisclosed profit in violation of its fiduciary duties." (FAC ¶ 166.) It is the undislcosed, unlawful markup, not simply the name "tax return preparation fee," which violates Northern's fiduciary duties. (*See* FAC ¶¶ 5-13, 161-168.)

Regarding the undisclosed overseas aspect of the tax return preparation work, the FAC alleges that "a reasonable beneficiary receiving Northern's Trust's statements or fee schedules would not know or have reason to know that Northern Trust has outsourced much of the tax preparation work to overseas entities." (FAC ¶ 168.) The FAC explains why: "There is nothing on these statements or fee schedules that would cause a reasonable beneficiary to suspect that the tax return preparation work had been offshored. Instead, a reasonable beneficiary is led to believe based on these statements and fee schedules that all of the tax return preparation work is being done in the

1   United States." (FAC ¶ 168.)

2       The trustee case *Henderson v. Bank of N.Y. Mellon*, 332 F.Supp.3d 419, 434 (D. Mass. 2018)

3   is directly on point on the issue of tolling where a trustee is making an undisclosed markup on

4   additional fees at the trusts' expenses. In *Henderson*, the beneficiaries challenged trustee tax return

5   preparation fees as being an unlawful markup in breach of the trustee's fiduciary duties. There, the

6   trustee had paid a lower amount to a third party but charged the trusts more. Both here and in

7   *Henderson*, the claims are the same: the fees are unreasonable because the trustee is making an

8   undisclosed, secret profit at the trusts' expenses in violation of the trustee's fiduciary duties.

9       The trustee in *Henderson*, like Northern here, argued that the listing of the tax return

10  preparation fee on statements and fee schedules was sufficient to trigger inquiry notice. *Id.* The

11  *Henderson* court rejected that argument (on a motion for summary judgment), holding that the

12  statements and other disclosures of the tax return preparation fee "were not sufficient to put a

13  reasonable person on actual or constructive notice of the tax-preparation markup. In other words, a

14  rational fact-finder could readily conclude that neither plaintiff knew nor reasonably should have

15  known that the tax-preparation fee included the markup now complained of." *Id.*

16      Northern argues that this Court should not follow *Henderson* because it involved a third

17  party doing the tax return preparation. (Mot. at 21:11-20.) *Henderson*'s tolling holding did not turn

18  on whether the tax return preparation was outsourced or done internally. Rather, it turned on the

19  trustee secretly marking up the fee and making an undisclosed profit. *Henderson*, 332 F.Supp.3d at

20  434. The FAC alleges the same: Northern is marking up the tax return preparation fee and making

21  an undisclosed profit in violation of its fiduciary duties. And, the FAC has additional facts not

22  present in *Henderson* regarding Northern's representations to the beneficiaries about the fees and fee

23  increases being necessary so Northern can continue to deliver services.

24      Here, as in *Henderson*, a reasonable beneficiary receiving Northern's statements or fee

25  schedules would not know or have reason to suspect that Northern is marking up the fees. (FAC ¶

26  163.) To the contrary, in its form communications which include fee schedules, Northern has been

27  consistent in its message to Plaintiff and the putative class that the fees are not only reasonable but

28  necessary. (FAC ¶ 163; *see also* ¶¶ 5-11.) Further, because the basis for the tax preparation fee is

not even explained to the administrative officers that handle the account, even they are in the dark and unable to answer any question beyond what is on the fee schedule.  (FAC ¶ 163.)  For these reasons, neither the Plaintiff nor putative class members knew or should have known that these fees were unreasonable.  (FAC ¶ 163.)  The discovery rule applies under these allegations.

Finally, the FAC addresses the problems that would arise if simply listing a fee would require a beneficiary to file a lawsuit to preserve his or her rights.  (FAC ¶ 6.)  A trustee is under a duty to communicate to the beneficiary all information that is reasonably necessary to enforce a beneficiary's right to prevent or redress a breach of trust.  (FAC ¶ 6.)  Acquiescence to a fee schedule does not constitute knowledge of a breach of trust.  (FAC ¶ 6.)  To conclude otherwise could only mean that every beneficiary that receives a fee schedule or an account statement with a fee must assume at that point forward that there is something awry and take legal action.  (FAC ¶ 6.) If the mere listing of a fee on any statement would trigger a recipient to file a lawsuit, the courts would be clogged even more so because any fee would necessarily result in a lawsuit being filed to preserve the statute of limitations.  That is not the law, and the beneficiary must have some notice other than a fee being charged that the trustee is engaged in wrongful conduct.  (FAC ¶ 6.)

### 2.  All Claims Are Tolled Under the Continuing Violation Doctrine

Another basis to toll the statute of limitations for all claims is under the continuing violation doctrine.  (FAC ¶ 169.)  A continuing violation occurs where a party has engaged in a continuing course of unlawful conduct over a period of time.  *Richards v. CH2M Hill, Inc*., 26 Cal.4th 798, 823 (2001).  Where, as here, a tort involves a continuing wrong, the statute of limitations does not begin to run until the date of the last injury when the tortious act ceases.  *Birschtein v. New United Motor Manufacturing, Inc.*, 92 Cal.App.4th 994, 1003 (2001).  While the continuing violation doctrine is inapplicable where a complaint identifies a series of discrete, independently actionable alleged wrongs, the doctrine applies where a wrongful course of conduct became apparent only through the accumulation of a series of harms.  *Aryeh v. Canon Bus. Sols., Inc.,* 55 Cal.4th 1185, 1198 (2013).

The FAC alleges claims going back to 2013.  (FAC ¶¶ 91-92, 134.)  Northern's overcharging cannot be seen by merely looking at one year's charge.  Instead, one needs to look at Northern's increase in fees over the years even though technological improvements should have led to a

decrease in fees.  (*See* FAC ¶¶ 15, 91, 112, 126, 144, 228.)  The FAC alleges that Northern is "engaging in a continuing course of conduct of charging tax return preparation fees and Class Action Distribution Charges which, to this day, has not ended."  (FAC ¶ 169.)  The FAC alleges that the acts and omissions "including, but not limited to, the continued charging of tax return preparation fees and Class Action Distribution Charges has been ongoing and continues to the present, July 2023, with no foreseeable end."  (FAC ¶ 169.)  Because Northern continues with these practices and one needs to look at the charges over time, the limitations period should be tolled on this basis.

The authorities Northern cites involve purely discrete, independent wrongs.  *See Tawfik v. JPMorgan Chase Bank, N.A.*, No. 20-cv-02946-JSC, 2020 WL 5074398, at *5 (N.D. Cal. Aug. 26, 2020) (separate overcharges in violation of bankruptcy order); *Focus 15, LLC v. NICO Corp.*, No. 21-cv-01493-EMC, 2022 WL 267441, at *10 (N.D. Cal. Jan. 28, 2022) (separate failures to repay on a promissory note).  Here, it is the history of Northern's additional fees viewed over several years in light of the technological advances which makes the doctrine applicable.

### 3.   The Tax Return Preparation Fee Claims Are Tolled Under Class Action Tolling Authority

The Court should also toll the limitations period for the tax return preparation fee claim to 2013 based on *American Pipe* and related tolling doctrines.  (FAC ¶¶ 159-160.)  Northern takes an impermissibly narrow reading of the tolling permitted by previously filed class actions.  While *American Pipe* addressed the tolling of federal claims in a federal class action, that is not the end of the analysis.  The Ninth Circuit applies equitable tolling principles to California named and unnamed putative class members even if, as a technical matter, *American Pipe* tolling would not apply because the claims involved are state law, not federal claims.  *Hatfield*, 564 F.3d at 1186-89.  A three-factor test is applied: "(1) timely notice to the defendant in the filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim."  *Id.* at 1185.

All three factors are applicable here based on the pleadings.  First, Northern is aware of the *Banks v. Northern Trust Corporation*, No. 2:16-cv-9141 (C.D. Cal. Dec. 9, 2016), as it litigated the case for years.  Second, given Northern's involvement in *Banks*, there is no prejudice in gathering

evidence to defend against this claim.  The FAC expressly alleges the tax return preparation fee claims were tolled as a result of the filing of *Banks*.  (FAC ¶ 159.)  The FAC outlines the history of *Banks*:  it was a Rule 23 proposed class action filed on December 9, 2016 challenging, among other practices, the tax return preparation fee, that class certification on that claim was denied on December 6, 2019,[3] and that Plaintiff filed her Complaint on November 10, 2022, within three years of December 6, 2019.  (FAC ¶¶ 159-160.)  Finally, Plaintiff has engaged in good faith and reasonable conduct in filing the second claim, particularly since the reason for the denial of class certification in *Banks* on this claim was factors unique to the plaintiff in that case.  (*See, e.g.*, fn. 3.)

Further, the *Banks* case was filed directly in the Central District of California.  *See Banks v. Northern Trust Co.*, 2:16-cv-09141-JFW, ECF No. 1.  This *Emerson* case was filed in state court, the Mendocino County Superior Court.  (ECF No. 1, Notice of Removal.)  It was Defendants who removed the case to the Northern District.  The *Emerson* case involves a California plaintiff whose case was initially filed in California state court raising the same claims relating to the tax return preparation fee as was raised in *Banks*, and will involve similar evidence.

Northern's argument that the tolling would only apply to Plaintiff's individual claim is incorrect.  The Ninth Circuit expressly applied the equitable tolling principles to named and unnamed putative class members.  *Hatfield,* 564 F.3d at 1186.

### C.  The FAC Plausibly Alleges UCL Unfair, Accounting, and Unjust Enrichment/Quasi-Contract/Restitution Claims

#### 1.  UCL

Northern argues that Plaintiff did not allege any unlawful prong as relates to the Class Action Distribution Charge.  For this claim, like the tax return preparation fee claim, Plaintiff alleges that the charge is a breach of fiduciary duty.  (FAC ¶¶ 220-237.)  The Court previously

---

[3] The Ninth Circuit's *Banks'* mandate issued on August 30, 2021.  *See* No. 20-55297, ECF No. 63. The Ninth Circuit affirmed summary judgment on grounds unique to the plaintiff on the tax return preparation fee claim, and therefore did not review the class certification order.  *Id.* at ECF No. 61. A review of the District Court's order denying class certification, which focused primarily on the separate investment claim not part of this case, shows that the denial on the tax return preparation fee claim was grounded on unique factors related to the plaintiffs and their trust.  *See* No. 2:16-cv-9141 (C.D. Cal.), ECF No. 106.

recognized a viable breach of fiduciary duty claim satisfies the unlawful prong. (June 20 Order at 10:25-27.) Plaintiff has therefore adequately alleged UCL unlawful prong for the Class Action Distribution Charge.

As to the UCL unfair prong for both claims, Plaintiff corrected the deficiencies the Court identified under both the public policy tethering standard and the balancing standard.

In its June 20 Order, the Court held that Plaintiff had not sufficiently alleged a public policy tethering unfair claim, as "[t]he Complaint did not cite to any legislatively declared policy. While Plaintiff argues that the Probate Code details a policy of strict requirements, the Court is not convinced that a violation of the Probate Code itself amounts to a legislatively declared policy for purposes of an unfair business practice under the UCL." (June 20 Order at 11:3-8.)

The FAC responds by expanding on the comprehensive and strict requirements the California Legislature has set for a trustee. (FAC ¶ 215, citing Cal. Prob. Code, Div. 9, Pt. 4.) The FAC recognizes that the Probate Code sections passed by the California Legislature "are not isolated or vague requirements placed on a trustee, but rather a detailed legislatively declared series of duties and requirements mandating that a trustee be honest, prudent, and loyal, and to place the interests of the beneficiaries before its own." (FAC ¶ 215, citing Cal. Prob. Code §§ 16002(a), 16004, 16040(a), 16045 and 16047.)

Northern is wrong when asserting that "Plaintiff merely sets out the same provisions of the California Probate Code that she previously cited as the basis for the purported legislatively declared policy required to state the claim." (Mot. at 16:9-11.) The FAC instead discusses several sections of the Probate Code, many of which were not in the prior Complaint, to show that the California Legislature has placed comprehensive requirements on trustees given the enormous power they exercise. (FAC ¶ 215.) The FAC notes the nature of the Legislature's requirements imposed on a trustee governing every aspect of its powers and duties:

> These detailed legislatively declared policies include those relating to the trustee's duties in general (Cal. Prob. Code §§16000-16015), the trustee's standard of care (Cal. Prob. Code §§16040-16042), the duties under the Uniform Prudent Investor Act (Cal. Prob. Code §§16045-16054), the duties to report information and account to beneficiaries (Cal. Prob. Code §§16060-16069), and duties with regard to discretionary powers (Cal. Prob. Code §§16080-16082). (FAC, ¶ 215.) This legislative policy constraining the power of a trustee also includes a trustee's liability to the beneficiaries. See Cal. Prob. Code, Div. 9, Pt. 4, Ch. 4 (Cal. Prob. Code §§16400-16465).

- 19 -

(FAC ¶ 215.)  The California Legislature has therefore declared a clear public policy statement of imposing an exhaustive list of requirements that a trustee must follow in to appropriately  exercise its immense power over trust assets.  Therefore, under the public policy tethering standard, allegations of trustee fiduciary breaches are directly tethered to that legislatively declared policy.  (FAC ¶ 215.)

On the balancing standard, the June 20 Order held that "Plaintiff alleged that the Tax Returns Fee and the Class Action Fee are 'substantially injurious to consumers' without providing factual allegations that support this inference."  (June 20 Order at 11:6-8.)  Plaintiff addressed this by adding to the FAC:  "Under the balancing standard, a trustee taking excessive fees from trust assets it manages in violation of its fiduciary duties is substantially injurious to the beneficiaries. Further, there is no utility in such fee seizing practices that counterbalances those practices. Taking excessive and unearned fees from trust assets over which it has complete control necessarily means there are less funds available for the trust beneficiaries."  (FAC ¶ 216.)  These are not conclusory statements, but new allegations that the taking of excessive fees means there are less funds available for the beneficiaries, and that there is no utility in that practice which counterbalances the injury to the beneficiaries.  UCL unfairness under the balancing standard is plausibly alleged.

Finally, Plaintiff adequately alleges UCL standing.  (*See* Mot. at 16:23-17:4.)  The UCL provides for equitable remedies of restitution and injunctive relief.  Cal. Bus. & Prof. Code §17203; *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 954 (2017).  Here, Plaintiff seeks both an injunction and restitution.  (FAC ¶ 218.)  Money damages are not an adequate remedy at law because Plaintiff alleges an *ongoing* practice by Northern in charging the fees, that "[u]nless restrained and enjoined, Defendants will continue the acts and practices," and that "the Court must issue an injunction restraining and enjoining Defendants from engaging in the acts and practices alleged above."  (FAC ¶¶ 217-218.)  Indeed, the remedies for a breach of trust are inherently equitable in nature.  *See* Cal. Prob. Code § 16420.  As such, the UCL unfair prong has been adequately alleged under both the public policy tethering and balancing standards.

## 2. Accounting

Plaintiff seeks an equitable accounting for both the tax return preparation fees (second

cause of action) and the Class Action Distribution Charges (sixth cause of action).  The Court's June 20 Order outlined the elements for an equitable accounting:  " 'To assert a right to accounting, plaintiffs must demonstrate either "(1) the relationship of the parties created an equitable duty to account; (2) the complicated nature of accounts would make it difficult, if not impossible, for a jury to unravel the numerous transactions; or (3) an accounting on an otherwise legal claim is incidental to a demand for an injunction or other equitable relief." ' " (June 20 Order at 9:6-12, quoting *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1202 (N.D. Cal. 2010) (citing *Towers v. Titus*, 5 B.R. 786, 793 (N.D. Cal. 1979) (modifications omitted).)

The Court found that Plaintiff had not alleged facts plausibly supporting an accounting on the tax return preparation fees.[4]  The Court held while Plaintiff did allege a fiduciary duty between Northern and Plaintiff, Plaintiff did not plausibly allege a duty to account for the underlying cost of the tax return preparation, nor that the account is a "complicated nature," or that the accounting is "incidental to a demand" for equitable relief.  (June 20 Order at 9:15-21.)

The FAC corrects these deficiencies.  First, the FAC on both accounting claims now fills the gap and expressly alleges that a basis to order an accounting "is that this request for an accounting is incidental to Plaintiff's demand for equitable relief sought forth in this First Amended Complaint." (FAC ¶¶ 200, 242; *compare with* June 20 Order at 9:20-21.)  This is not a conclusory allegation, as Plaintiff has equitable claims such as the UCL, whose unlawful prong for tax preparation fee survived the first motion to dismiss.  (June 20 Order at 10:25-27.)  Plaintiff also demands equitable relief.  (*See, e.g.*, FAC ¶¶ 137, 218; Prayer for Relief #2, 5, 7-8.)  The Court should deny Defendants' motion on this basis alone.

Second, the FAC alleges a new basis for an accounting other than cost.  On the tax return preparation fees, Plaintiff alleges that Northern must account for:

> [T]he amount of the tax return preparation fees charged, the contract with any third party, the cost of who assists in preparing the tax returns, the time spent preparing the tax returns, when and why any related tax preparation fees were collected and how much the fees that the trustee collected exceeded the amount of the cost.

---

[4]  The Court found an accounting on the Class Action Distribution Charge failed based on its finding that the breach of fiduciary claim was not plausibly stated.  Plaintiff's FAC plausibly alleges a breach of fiduciary claim based on the Class Action Distribution Charges.

(FAC ¶ 199, new allegations underlined.)

The Court did not rule on the prior accounting obligations for the Class Action Distribution

Charges. Nevertheless, Plaintiff added additional allegations that Northern must account for:

> [T]he <u>amount of the Class Action Settlement Distribution Charges assessed</u>, the contract with any third party <u>who assists in this process</u>, <u>the cost of processing class action settlement distributions</u>, <u>the time spent processing</u> class action settlement distributions, when and why any related fees were collected and how much the fees that the trustee collected exceeded the amount of the cost.

(FAC ¶ 241, new allegations underlined.)

These new allegations are directly relevant to the factors the Court considers when

determining whether Northern charged an unreasonable fee in breach of its fiduciary duties. (*See*

June 20 Order at 5:4-12.) For example, one of the factors considered is the amount of time spent

preparing the tax returns or processing the class action settlement distributions. The accounting

claims seek that information. Another factor is the skill and effort required. The accounting claims

seek that information through asking Northern to identify who is assisting in these processes. These

accounting claims are now tied directly to the breach of fiduciary claim and whether the fees charged

are unreasonable. This is an additional reason to deny the motion as to the accounting claims.

### 3. Unjust Enrichment/Quasi-Contract/Restitution

Plaintiff's Complaint alleged an unjust enrichment claim based on the tax return preparation

fees (third cause of action) and Class Action Distribution Charges (seventh cause of action). In its

June 20 Order, the Court followed authority from the Ninth Circuit and construed Plaintiff's unjust

enrichment claim as a quasi-contract claim. (June 20 Order at 9:26-10:2.) The Court noted that:

"[A] quasi-contract claim cannot survive a motion to dismiss unless the proponent adequately pleads

that no legal remedy exists." (June 20 Order at 10:2-4, quoting *Barrett v. Apple Inc.*, 523 F. Supp.

3d 1132, 1157 (N.D. Cal. 2021).) The Court granted Defendants' motion because "Plaintiff did not

allege that a remedy at law is inadequate." (June 20 Order at 10:6.)

The FAC corrects that omission. On both claims, the FAC now alleges that "Plaintiff is

informed and believes that an adequate remedy at law may not exist for Plaintiff and members of the

proposed Class." (FAC, ¶ 207 (tax return preparation fee); ¶ 249 (Class Action Distribution

Charge).) With that addition, the quasi-contract claim is adequately pled.

Northern also argues that quasi-contract is not appropriate because this case involves an express binding agreement defining the parties rights.  (Mot. at 17:24-28.)  The two cases Northern cites involve real estate and insurance contracts, not trusts.  The trustee relationship is not merely governed by the trust document, and courts have broad equitable powers when dealing with trusts. *See, e.g.*, Cal. Prob. Code § 15002; Cal. Prob. Code § 16420 (remedies for breach of trust).  Northern as trustee is not just governed by the Fallgren Trust document, it is also governed by the duties and requirements set forth in the Probate Code and case law providing this Court with broad authority to fashion equitable remedies for any breach of trust.  *Id.; see also Day v. Greene*, 59 Cal.2d 404, 411 (1963) (unjust enrichment may occur when there has been a "breach of trust").

**D.  The FAC's New Facts Plausibly Allege Claims Against NTCORP**

The June 20 Order found that the Complaint's allegations "that NT Corp is Northern's parent, that NT Corp approves Northern's business plans (Compl. ¶ 19) and Northern's senior management (*id.* ¶ 30) and has a duty to remedy Northern's breaches of fiduciary violations (*id.* ¶ 33)" were "more akin to the activities of a parent that do not give rise to liability" and that "Plaintiff did not allege facts sufficient to show that NT Corp directly participated 'in the wrong complained of.' " (June 20 Order at 13:3-8, quoting *United States v. Bestfoods*, 524 U.S. 51, 64 (1998).)

The FAC adds substantially more facts establishing that NTCORP operated more than just a parent engaged in normal parental activities but was instead directly involved in the breaches alleged.  In addition to the allegations from the Complaint set forth above (FAC ¶¶ 29, 36-40, 43), the FAC also alleges several factual allegations regarding NTCORP's direct role in the setting the fees alleged to be unlawful:

-   Senior Vice President and Manager of Global Client Tax Services Matthew Tushman has publicly stated that Global Client Tax Services is a part of NTCORP.  (FAC ¶¶ 12-13.)
-   "Plaintiff is informed and believes that Defendant NTCORP is the parent company of Northern Operating Solutions Private Limited and/or Northern Trust India. On information and belief, Northern Operating Solutions Private Limited and/or Northern Trust India are overseas entities that perform tax return preparation work for trusts for which Defendant Northern Trust serves as trustee. On information and belief, NTCORP

controls Operating Solutions Private Limited and/or Northern Trust India. As such, NTCORP plays an important and material role in the assessment of the standard tax return preparation fees that are the subject of this case." (FAC ¶ 41.)

- "Notably, from public filings, Global Tax Services is a division of NTCORP while at the same time providing trust tax services to Northern Trust." (FAC ¶ 43.)

- "As alleged herein, the head of Global Tax Services has previously testified that Northern Trust is using an NTCORP overseas affiliate to provide support and servicing for the tax return preparation." (FAC ¶ 89.)

- "On information and belief, Plaintiff alleges that NTCORP and/or Northern Trust has outsourced the preparation of returns to an unidentified overseas party, either affiliated or non-nonaffiliated, and has not informed the Plaintiff or the putative Class of this overseas component. A beneficiary would not know, nor have any reason to suspect based on the account statements and form fee schedules, that Northern Trust has tax return preparation work done overseas." (FAC ¶ 103.)

- "Plaintiff is informed and believes that Defendants process and monitor securities litigation that settle through United States courts and files claims on behalf of custodial clients" and that all of the work done to monitor and process class action settlements "is duplicative of the same asset administration that Defendants provides to its larger custodial clients like pension funds." (FAC ¶¶ 124-125.)

- "The Class Action Distribution Charge is not related to any actual charges that Defendants incur respective to Plaintiff's or the other putative Class members' trusts." (FAC ¶ 128.)

These new, specific factual allegations are more than just normal parent activities, such as common ownership or approving general business plans. These allegations demonstrate that the fees alleged to be unlawful can "'be traced to the parent through the conduit of its own personnel and management'" and "'the parent is directly a participant in the wrong complained of,'" making NTCORP also liable. *Bestfoods*, 524 U.S. at 64 (citation omitted).

**E.  If the Court Grants Defendants' Motion, Plaintiff Requests Leave to Amend**

Rule 15(a)(2) provides that leave to amend should be freely given "when justice so requires." The Ninth Circuit has instructed that the standard for granting leave to amend is "generous."  *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  If the Court finds the FAC defective in any manner, Plaintiff respectfully requests leave to amend.

## V. Conclusion

The Court should deny Defendants' Rule 12(b)(6) motion to dismiss (ECF No. 47.)

Dated:  September 13, 2023

/s/ Thomas J. Brandi                            /s/Derek G. Howard

Thomas J. Brandi                                  Derek G. Howard
Brian J. Malloy                                      Ashley M. Romero
**THE BRANDI LAW FIRM**                **DEREK G. HOWARD LAW FIRM**

*Attorneys for Plaintiff*