1
2
3
4                        UNITED STATES DISTRICT COURT
5                      NORTHERN DISTRICT OF CALIFORNIA
6
7   CHANDLER EMERSON,                    Case No. 23-cv-00241-TLT
8                 Plaintiff,
9          v.                           ORDER GRANTING AND DENYING
                                        IN PART DEFENDANTS' MOTION TO
10  NORTHERN TRUST CORPORATION, et      DISMISS
    al.,                                Re: ECF No. 47
11                Defendants.
12
13         Plaintiff Chandler P. Emerson brings the instant suit against Defendants Northern Trust

14  Corporation ("NT Corp") and the Northern Trust Company ("Northern Trust") (collectively,

15  "Defendants") for breach of fiduciary duty, quasi-contract, unfair competition, accounting, and

16  violation of California elder abuse statutes.  *See* ECF No. 39 ("FAC").  Before the Court is

17  Defendants' motion to dismiss Plaintiff Chandler P. Emerson's first amended complaint.  *See* ECF

18  No. 47 ("Mot.").  For the reasons below, Defendants' motion is **GRANTED** and **DENIED** in part,

19  with leave to amend.

20         The Court **GRANTS** this motion for the following claims: breach of fiduciary duty (claim

21  5); violation of California's unfair competition law (claim 4) related to the unlawful prong and

22  class action fee; violation of California's unfair competition law (claim 4) related to the unfair

23  prong and both types of fees; accounting (claim 6) related to the class action fee; unjust

24  enrichment (claims 3 and 7) for both types of fees; and claims against NT Corp.  The Court

25  **DENIES** this motion regarding accounting (claim 2) related to the tax return fee.

26         The Court **GRANTS** leave to amend of the unfair competition law claim (claim 4) related

27  to the unfair prong claim and tax return fee and (2) claims brought against NT Corp.

28

United States District Court
Northern District of California

# I.    BACKGROUND

## A.    Factual Background

Ms. Emerson is a beneficiary of her family trust, E.V. Fallgren Trust ("Trust"), which was established in August 1961.[1]  FAC ¶ 1.  The terms of the Trust are set forth in two documents: the E.V. Fallgren's will and a related court order (collectively, the "Fallgren Trust instrument").  *See* Prior Order at 2.  The case arises from alleged corporate self-dealing by two corporate entities, NT Corp, and Northern Trust, who administer the Trust.  *Id*. ¶ 2.  Northern Trust is a subsidiary of NT Corp.  *Id*. ¶ 36.  Notably, the Fallgren Trust instrument does not specify the trustee's compensation.  *See* ECF Nos 18-2 ("Ex. 1"), 18-3 ("Ex. 2").

Ms. Emerson alleges that Defendants have violated their trustee duties by charging additional and excessive fees associated with (1) preparing fiduciary tax returns and (2) a "Class Action Distribution Service Charge" fee.  *Id*. ¶¶ 4, 14.  With respect to the tax return fees, Defendants provide beneficiaries with a fee schedule, but the actual fees can vary drastically.  *Id*. ¶¶ 90-92.  For example, in 2014, Northern Trust charged one trust $11,880 for tax preparation, whereas in 2017, Northern Trust charged a different trust only $3 for its tax services.  *Id*. ¶ 93.  More importantly, Defendants do not know the cost basis for the tax return fee.  *Id*. ¶ 90.

Ms. Emerson claims the tax return fees are unreasonable for several reasons.   First, the fees are high in comparison to the amount of work and costs associated with the service.  *Id*. ¶¶ 10, 96, 99.  Ms. Emerson also asserts, on information and belief, that Defendants outsourced the preparation of the tax returns overseas, which has reduced Defendants' costs.  *Id*. ¶ 109.  In addition, Defendants increased the tax preparation fees, but made false statements about the causes of the fee increase.  *Id*. ¶¶ 7-10.  Specifically in 2014 and 2016, Defendants notified beneficiaries that they were charging greater fees to ensure "the highest level of professional services," but Ms. Emerson claims this was false considering the minimal costs and skills associated with providing the tax returns.  *Id*.  Second, Defendants have failed to keep a detailed record of the amount of time it takes to prepare each tax filing.  *Id*. ¶¶ 12, 100.  Since Defendants have failed to maintain a

---

[1] The background of this case, including related litigation, is discussed in more detail in the Court's prior order.  *See* ECF No. 34 ("Prior Order").

detailed record, it is difficult for beneficiaries to investigate whether their tax fees are reasonable. *Id.* ¶ 13.

For the class action service charge, Northern Trust charges a flat fee of $25.00. *Id.* ¶ 14. Northern Trust does not provide an explanation as to what the $25 fee covers. *Id.* ¶ 120. The charge ostensibly is for monitoring class action settlements, filing forms, and deposition settlements. *Id.* The Fallgren Trust appears to have only been charged once for the class action service charge in October 2020. *Id.* ¶ 131.

Many of Ms. Emerson's assertions related to the class action settlement fees are based on information and belief. *See id.* ¶¶ 15, 18. As such, Ms. Emerson claims that the class action settlement fees are also unreasonable. First, the services covered by the class action settlement fee are typical trustee duties, for which Northern Trust already receives compensation. *Id.* ¶¶ 16, 122-125. Second, Northern Trust has developed an automated platform to monitor class action settlements, which requires minimal time or effort to use. *Id.* ¶¶ 15, 126. Northern Trust does not keep any records about the class action fees that would allow the parties to determine whether the charges are fair or reasonable. *Id.* ¶ 18.

Consequently, Ms. Emerson brings an action on her behalf and on behalf of all trusts similarly situated across 19 states where Northern Trust acts as a trustee. *Id.* ¶ 23. Ms. Emerson asserts eight causes of action against Defendants related to fees associated with preparing tax returns ("Tax Return Fee") and class actions ("Class Action Fee"): breach of fiduciary duty (claims 1 and 5); accounting (claims 2 and 6); unjust enrichment or quasi-contract (claims 3 and 7); unfair competition under California Business and Professions Code § 17200 ("UCL") (claim 4); and elder abuse (claim 8). *See id.* ¶¶ 170-268.

### B.    Procedural History

On November 10, 2022, Ms. Emerson filed suit against Defendants in superior court. *See* ECF No. 1 ("Notice of Removal"), ECF No. 1-2 ("Ta Decl."). On January 18, 2023, Defendants removed the case to federal court. *See* Notice of Removal.

On February 24, 2023, Defendants filed their first motion to dismiss the original complaint and challenged all of Ms. Emerson's claims. *See* ECF No. 17. The parties stipulated to extend the

United States District Court
Northern District of California

1  briefing schedule for Defendants' first motion to dismiss.  *See* ECF No. 21.  Defendants filed their

2  opposition on April 7, 2023 and Ms. Emerson filed her reply on April 25, 2023.  *See* ECF Nos. 24,

3  29.  On June 20, 2023, the Court issued an order granting and denying in part Defendants' first

4  motion to dismiss.  *See* ECF No. 34.  Specifically, the Court denied in part Defendants' first

5  motion to dismiss as it related to some of the Tax Return Fee claims, including breach of fiduciary

6  duty (claim 1), UCL unlawful prong claim (claim 4), and elder abuse (claim 8).  *See id*.  The Court

7  dismissed the remaining claims but granted leave to amend.  *See id*.

8      On July 5, 2023, Ms. Emerson filed her first amended complaint.  *See* FAC.   On August

9  16, 2023, Defendants filed a motion to dismiss the first amended complaint.  *See* Mot.  Defendants

10  moved to dismiss some of the Tax Return Fee claims, including accounting (claim 2), unjust

11  enrichment/quasi-contract (claim 3), and violation of the UCL (claim 4).  *See id*. at 22-24.

12  Defendants also moved to dismiss several Class Action Fee claims, including breach of fiduciary

13  duty (claim 5), violation of the UCL (claim 4), accounting (claim 6), and unjust enrichment/quasi-

14  contract (claim 7).  *See id*. at 13-18.  Defendants further argued certain claims were time-barred

15  and moved to dismiss all claims against NT Corp.  *See id*. at 18-22, 24-26.  Ms. Emerson filed an

16  opposition on September 13, 2023 and Defendants filed a reply on September 27, 2023.  *See* ECF

17  No. 50 ("Opp'n"); ECF No. 51 ("Reply").  The Court held a hearing on October 24, 2023.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

20      Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to

21  dismiss for "failure to state a claim upon which relief can be granted."  To overcome a Rule

22  12(b)(6) motion to dismiss, a plaintiff's "factual allegations [in the complaint] 'must . . . suggest

23  that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc*., 765 F.3d 1123,

24  1135 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation*

25  *v. Twombly*, 550 U.S. 544 (2007)).  The Court must "accept all factual allegations in the complaint

26  as true and construe the pleadings in the light most favorable to the nonmoving party."  *Knievel v.*

27  *ESPN*, 393 F.3d 1068, 1072 (9th Cir.2005).  But the Court need not, however, accept as true

28  pleadings that are no more than legal conclusions or the "'formulaic recitation of the elements' of

*United States District Court*
*Northern District of California*

1    a cause of action." *Iqbal*, 129 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

2        **B.    Leave to Amend**

3        Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend "shall be

4    freely given when justice so requires."  But courts have discretion to deny leave to amend because

5    of "'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure

6    deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

7    of allowance of the amendment, and futility of amendment.'"  *Leadsinger, Inc. v. BMG Music*

8    *Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

9    **III.    DISCUSSION**

10        **A.    Judicial Notice**

11        As an initial matter, Ms. Emerson attached a redline comparing her operative complaint

12    and her prior complaint, to her opposition brief.  *See* ECF 50-1, ("Redline Compl.").  Ms.

13    Emerson did not request judicial notice of the exhibit, but the Court will do so *sua sponte*, because

14    it is "capable of accurate and ready determination by resort to resources whose accuracy cannot

15    reasonably be questioned."  *See* Fed. R. Evid. 201(b)(2), 201(c)(1); *Kim v. Shellpoint Partners,*

16    *LLC*, No. 15CV611, 2016 WL 1241541, at *3 (S.D. Cal. Mar. 30, 2016) (taking judicial notice of

17    a redline complaint); *BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-CV-03345, 2021 WL

18    4061698, at *3 (N.D. Cal. Sept. 7, 2021) (same).

19        **B.    Breach of Fiduciary Duty (Class Action Fee) – Claim 5**

20        The Court first addresses Ms. Emerson's breach of fiduciary duty claim, since many of her

21    other claims, such as the UCL or accounting claims, depend in part on this claim.  Defendants

22    contend that the First Amended Complaint fails to properly plead a breach of fiduciary duty with

23    respect to the Class Action Fee(s).  Mot. at 13-15.  First, where trust documents, such as the

24    Fallgren Trust instrument, do not specify the trustee's compensation, the trustee is entitled to

25    reasonable compensation under the circumstances.  *Id*. at 13.  Second, trustees are permitted to

26    receive both general administrative fees and additional fees for extraordinary services, such as

27    services that are not regularly occurring.  *Id*. at 14.  In addition, Ms. Emerson has pointed to no

28    authority that a $25 class action service charge is unreasonable.  *Id*.  Ms. Emerson has revised her

United States District Court
Northern District of California

5

United States District Court
Northern District of California

claims based on "information and belief" and not only are these assertions conclusory, but they reinforce that the class action services go beyond Northern Trust's regular trustee duties. *Id*. at 6, 14-15.

In response, Ms. Emerson asserts that the Class Action Fee is unreasonable. First, the services related to the Class Action Fee are part of Northern Trust's regular trustee duties, for which it already receives compensation. Opp'n at 7-8; FAC ¶¶ 16, 122, 127. In addition, the fee relates to a highly automated service and there are minimal cost or skills involved with monitoring and processing class action settlements. Opp'n at 1, 8-9; FAC ¶¶ 15, 124, 126. Accordingly, courts have found similar fees are unreasonable based on *In re McLaughlin's Est*., 43 Cal. 2d 462, 468 (1954). Opp'n at 7-9; FAC ¶ 232. Second, Northern Trust asserts that the charge is an "extraordinary service," but it has the burden to show that the time or effort it spends on class action tasks is beyond the ordinary services for administering a trust. Opp'n at 7, 9-10; FAC ¶ 234. Northern Trust has failed to meet this requirement. Opp'n at 10; FAC ¶ 235. In its reply, Defendants reiterates its earlier arguments but also notes that for the "extraordinary service" allegations, Ms. Emerson is relying on cases that do not discuss the federal pleading standards. Reply at 3-4.

"A violation by the trustee of any duty that the trustee owes the beneficiary is a breach of trust." Cal. Prob. Code § 16400. "In investing and managing trust assets, a trustee may only incur costs that are appropriate and reasonable in relation to the assets, overall investment strategy, purposes, and other circumstances of the trust." Cal. Prob. Code § 16050. "If the trust instrument does not specify the trustee's compensation, the trustee is entitled to reasonable compensation under the circumstances." Cal. Prob. Code § 15681.

To determine if trustee compensation is reasonable, courts consider nine factors: (1) "the income of a trust," (2) "the success or failure of the administration of the trustee," (3) "any unusual skill or experience which the trustee in question may have brought to his work," (4) "the fidelity or disloyalty displayed by the trustee," (5) "the amount of risk and responsibility assumed," (6) "the time consumed in carrying out the trust," (7) "the custom in the community as to allowances to trustees by settlors or courts and as to charges exacted by trust companies and

United States District Court
Northern District of California

1  banks," (8) "the character of the work done in the course of administration, whether routine or

2  involving skill and judgment," and (9) "any estimate which the trustee has given of the value of

3  his own services." *In re McLaughlin's*, 43 Cal. 2d at 468. Whether the compensation is

4  reasonable depends on the facts of the specific case. *Id.*

5      The Court finds that Ms. Emerson's allegations are made in conclusory terms and do not

6  meet the plausibility pleading standard. *See Iqbal*, 556 U.S. at 678. Many of Ms. Emerson's

7  allegations characterizing the Class Action Fee and its related costs are based on information and

8  belief. *See* FAC ¶¶ 15, 120, 124-126, 227-228. While a plaintiff may plead facts alleged upon

9  information and belief, conclusory allegations remain insufficient. *Compare Soo Park v.*

10  *Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (finding allegations plausible, including those based

11  on information and belief, where there were specific and numerous allegations), *with Menzel v.*

12  *Scholastic, Inc.,* No. 17-CV-05499, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018)

13  (allegations were conclusory where the plaintiff's allegations were made only on information and

14  belief without any other factual support). For example, if Ms. Emerson could provide additional

15  details regarding what the Class Action Fee is used for or how automated the underlying work is,

16  this may be sufficient for her allegations to withstand scrutiny under *Iqbal*.

17      Here, Ms. Emerson fails to assert additional facts that would render her fiduciary duty

18  claim plausible. For example, Ms. Emerson states that the services covered by the Class Action

19  Fee are similar to Northern Trust's regular duties but the sole basis for this assertion is based on

20  information and belief. *See e.g., Cloudera, Inc. v. Databricks, Inc*., No. 21-CV-01217, 2021 WL

21  3856697, at *6 (N.D. Cal. Aug. 30, 2021) ("Although courts may consider whether 'facts are

22  peculiarly within the possession and control of the defendant, such latitude does not mean that

23  conclusory allegations are permitted."). Likewise, Ms. Emerson asserts that the fee relates to a

24  highly automated service and there are minimal costs associated with monitoring class actions or

25  processing settlements, but she does not provide any other supporting facts. Although Ms.

26  Emerson's allegations suggest that some of the *In re McLaughlin* factors may have been satisfied,

27  since the assertions are made in largely conclusory terms, she has not properly pled her claim.

28

1    As for the parties' arguments that the fee may or may not be for an extraordinary service[2],

2    the Court finds it is ancillary to the primary issue – it is Ms. Emerson's burden to plead her breach

3    of fiduciary duty claim.  Whether the Class Action Fee is or is not an extraordinary service is a

4    factual dispute for later in the case – but currently Ms. Emerson has failed to plead the facts

5    necessary to make her breach of fiduciary claim plausible.

6    Accordingly, the Court **GRANTS** Defendants' motion to dismiss Ms. Emerson's breach of

7    fiduciary duty claim based on the Class Action Fee, with prejudice.  In its prior order, the Court

8    stated that "Plaintiff must allege facts to support the inference that the Class Action Fee is

9    unreasonable."  Prior Order at 8.  Ms. Emerson has failed to correct these deficiencies and

10   providing Ms. Emerson with an additional opportunity to amend would unduly prejudice

11   Defendants by requiring them to file repeated motions to dismiss.  *See Leadsinger*, 512 F.3d at

12   532.

13   **C.    Unfair Competition Law (UCL)  – Claim 4**

14   Ms. Emerson brings claims under both the unlawful and unfair prongs of the UCL.  FAC

15   ¶¶ 209-219.  Under the UCL, "unfair competition shall mean and include any unlawful, unfair or

16   fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal.

17   Bus. & Proc. Code § 17200.

18   **1.    Unlawful (Class Action Fee)**

19   Defendants argue that because Ms. Emerson has failed to state a claim regarding breach of

20   fiduciary duty based on the Class Action Fee, her related unlawful UCL claim must fail.  Mot. at

21   16.  By contrast, Ms. Emerson asserts she has adequately pleaded her unlawful Class Action Fee

22   claim.  Opp'n at 18-19.  As part of her argument, Ms. Emerson compares this claim to her

23   unlawful Tax Return claim, which the Court held was properly pleaded in its last order.  *Id.*; Prior

24   Order at 10.  Ms. Emerson's arguments regarding her other unlawful claim (related to the Tax

[2] Ms. Emerson asserts that Defendants must prove whether a service is extraordinary.  But the cases Ms. Emerson relies on do not reflect the federal pleading standard and Defendants are not required to prove whether the fee is extraordinary at this stage in the case.  *Cf. In re Fulcher's Est.*, 44 Cal. Rptr. 861, 866 (Ct. App. 1965) (describing burden of proof in probate court); *In re Bissinger's Est.*, 60 Cal. 2d 756, 770–71 (1964) (same).

United States District Court
Northern District of California

Return Fee) do not apply here because that claim was based on a different underlying violation.

To plead there was an unlawful business practice, the plaintiff must assert that the defendant violated a law or regulation.  *See Klein v. Chevron U.S.A., Inc*., 137 Cal. Rptr. 3d 293, 326-27 (Cal. Ct. App. 2012) (internal quotation omitted).  "Virtually any law or regulation – federal or state, statutory or common law" can serve as a predicate for an unlawful violation.  *See id*.

"If the predicate claims fail, the [unlawful prong] UCL claim also fails." (citing *Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1168 (9th Cir. 2012)).  Since Ms. Emerson has not plausibly pled a breach of fiduciary duty based on the Class Action Fee, her corresponding unlawful claim fails as well.  *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022).

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Ms. Emerson's unlawful UCL claim based on the Class Action Fee, with prejudice.  Since the Court has already denied Ms. Emerson leave to amend her fiduciary duty claim, amendment would be futile.

### 2.    Unfair Competition Law (Class Action Fee and Tax Return Fee)

Defendants argue that Ms. Emerson's unfair UCL claims, related to the Class Action Fee and the Tax Return Fee, should be dismissed based on four arguments.  First, regarding the Class Action Fee, Defendants assert that not only must Ms. Emerson set out the legislative policy which is the basis for her claim, but she must explain how the disputed conduct differs from unlawful conduct.  Mot. at 16.  Defendants claim that Ms. Emerson has failed to meet this standard.  *Id*.  Second, regarding the Tax Return Fee, Defendants assert that simply listing probate code sections does not establish a "legislatively declared policy" protected under the UCL.  *Id*. at 23-24.  Defendants also raise two arguments that apply to both fees.  Third, Ms. Emerson pleads conclusory allegations that the related services have limited utility or are substantially injurious.  *Id*. at 16, 24.  Fourth, Ms. Emerson's claims fail because she did not plead any facts to show that she lacks an adequate remedy at law.  *Id*. at 16-17, 24.

In response, Ms. Emerson avers she has sufficiently pleaded both of her unfair claims under either the tethering or balancing standard, as required under the California law.  Opp'n at

18-20.  Ms. Emerson argues she has standing under the UCL because she seeks both an injunction and restitution.  *Id*. at 20.  Further, money damages are not an adequate remedy at law, because she alleges an ongoing practice by Northern Trust in charging excessive fees.  *Id*.  Ms. Emerson did not appear to contest Defendants' first argument.  *See generally*, *id*.

To assert an unfair claim, the plaintiff must show that the defendant has committed an "unfair" act.  Cal. Bus. & Proc. Code § 17200.  California courts have applied two tests to determine if an act is unfair, including a balancing test (*i.e*., the business practice offends established public policy) or a tethering test (*i.e*., the business practice violates public policy tethered to some legislatively declared policy).  *Bardin v. DaimlerChrysler Corp*., 136 Cal. App. 4th 1255, 1267-68 (2006) (describing balancing test) (internal quotation marks omitted); *Lozano v. AT&T Wireless Servs., Inc*., 504 F.3d 718, 735 (9th Cir. 2007) (describing tethering test) (internal quotation marks omitted).

While Defendants assert a bevy of arguments, the Court finds its fourth argument determinative.  Ms. Emerson has failed to plead either of her unfair claims because she did not allege that she lacks an adequate legal remedy.  *See Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020) ("Under these principles, Sonner must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL…").  At a minimum, Ms. Emerson must plead that she actually lacks an adequate remedy at law.  *See id*.; *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022).  But in her complaint, she states "Plaintiff is informed and believes that an adequate remedy at law *may not* exist for Plaintiff and members of the proposed Class," which is not sufficient under *Sonner*, because the plaintiff must plead she lacks an adequate remedy at law.  FAC ¶¶ 207, 249[3] (emphasis added); *see Johnson*, 2022 WL 74163, at *3 (noting conditional pleading of adequate remedies does not satisfy *Sonner*).  Further, Ms. Emerson has failed to provide any allegations that the damages she seeks are inadequate or additional facts to distinguish

---

[3] The Court acknowledges that it references paragraph sections that are related to Ms. Emerson's unjust enrichment claim (claims 3 and 7).  But parts of these paragraphs were also incorporated into Ms. Emerson's UCL cause of action (claim 4).  *See e.g*., FAC ¶ 209.

her damages request from restitution. *See In re California Gasoline Spot Mkt. Antitrust Litig*., No. 20-CV-03131, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021).   Ms. Emerson seeks injunctive relief by alleging an ongoing practice of charging unreasonable fees; however, she fails to explain why she or other class members could not be made whole with monetary damages.  *See id*. at *8 (citing multiple district courts in the Ninth Circuit that applied *Sonner* to injunctive relief claims); *In re MacBook Keyboard Litig*., No. 5:18-CV-02813, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (collecting cases).

The Court addresses Defendants' remaining three arguments.  For its first argument, Defendants contend that Ms. Emerson was required to explain how the conduct she relies on for her unfair claim differs from the conduct in her unlawful claim.  Although the cases cited by Defendants are persuasive authority, they do not bind this Court.  In addition, Defendants' cases are factually distinguishable.  For example, in *Synopsys, Inc. v. ATopTech, Inc*., No. C 13-2965, 2015 WL 4719048, at *9-10 (N.D. Cal. Aug. 7, 2015), the defendant, AtopTech, had failed to allege an actual antitrust violation and could not establish an unlawful UCL claim.  Nevertheless, AtopTech argued that its antitrust allegations satisfied the unfair prong of the UCL.  *Id*. at *10.  As a result, AtopTech needed to show how the conduct at issue violated the "policy and spirit" of antitrust law, but not the actual laws.  *Id*.  This differs from the instant case – Ms. Emerson's unlawful claim was dismissed due to conclusory allegations, not because the underlying behavior (*e.g*., charging unreasonable fees) was lawful.

Regarding Defendants' second argument, the Court finds that the probate code could qualify as a legislatively declared policy for purposes of an unfair business practice.  *Compare Cork v. CC-Palo Alto, Inc*., 534 F. Supp. 3d 1156, 1186-97 (finding unfair prong claims sufficiently pleaded bad on violations of an elder abuse statute and the California Health and Safety Code), *with Travelers Prop. Cas. Co. of Am. v. Centex Homes*, No. 11-3638, 2013 WL 4528956, at *4 (N.D. Cal. Aug. 26, 2013) (finding tethering test insufficiently pleaded based on rules of professional conduct, which are not laws).  Since her last complaint, Ms. Emerson has provided additional information about the purported violations of the California Probate Code, citing specific code sections related to a breach of fiduciary duty.  In addition, Ms. Emerson's Tax

Return fiduciary duty claim (claim 1) is still viable. *See* Prior Order at 6.   Accordingly, it may be possible for Ms. Emerson to properly plead an unfair claim based on her Tax Return Fee.  But this same reasoning does not extend to Ms. Emerson's Class Action Fee claim, because it relies on her dismissed Class Action fiduciary duty claim (claim 5). *See supra* Section III(B); *Price v. Apple, Inc.*, No. 21-CV-02846, 2022 WL 1032472, at *5 (N.D. Cal. Apr. 6, 2022) (dismissing unfair prong claim when related claims were dismissed); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (an unfair UCL claim cannot survive if the business practices at issue overlap with other UCL claims that are dismissed).  In sum, Ms. Emerson may be able to plead a viable unfair claim based on her Tax Return Fee, but not her Class Action Fee.

For its third argument, Defendants assert that based on the balancing standard, Ms. Emerson has insufficiently pleaded an unfair claim under either type of fee.  The Court holds that Ms. Emerson's balancing test allegations do not meet the plausibility pleading standard.  For instance, Ms. Emerson states that "a trustee taking excessive fees from trust assets it manages in violation of its fiduciary duties is substantially injurious to the beneficiaries." FAC ¶ 216.  But without additional facts to support these assertions, Ms. Emerson's allegations that the fees are excessive is not plausible. *See Price*, 2022 WL 1032472, at *5 (dismissing balancing test unfair prong claim where allegations were conclusory).

In sum, the Court **GRANTS** Defendants' motion regarding Ms. Emerson's unfair prong claims, without prejudice as it relates to the Tax Return Fee claim, but with prejudice as it relates to the Class Action Fee claim.  Ms. Emerson is granted leave to amend her Tax Return Fee claim because amendment is not futile, as discussed above.  But the Court does not grant leave to amend her Class Action Fee claim – the related breach of fiduciary duty claim has been dismissed and thus amendment would be futile.

### D.    Accounting

"A right to an accounting is derivative; it must be based on other claims." *Janis v. California State Lottery Com.*, 80 Cal. Rptr 2d 549, 554 (Ct. App. 1998) (citation omitted).  "To assert a right to accounting, plaintiffs must demonstrate either '(1) the relationship of the parties created an equitable duty to account; (2) the complicated nature of accounts would make it

1  difficult, if not impossible, for a jury to unravel the numerous transactions; or (3) an accounting on

2  an otherwise legal claim is incidental to a demand for an injunction or other equitable relief."

3  *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp. 2d 1193, 1202 (N.D. Cal. 2010) (citing

4  *Towers v. Titus*, 5 B.R. 786, 793 (N.D. Cal. 1979)) (modifications omitted).

### 1.    Class Action Fee – Claim 6

6      Defendants argue this claim should be dismissed because a right to accounting is derivative

7  of other claims.  In addition, Ms. Emerson failed to cure the defects related to her corresponding

8  breach of fiduciary duty claim.  Mot. at 17.  Finally, Ms. Emerson did not plead any facts to show

9  that she met the statutory prerequisites for an accounting under the California Probate Code.  *Id.*

10  Ms. Emerson responds that her breach of fiduciary duty claim has been remedied, and thus the

11  related accounting claim should not be dismissed.  Opp'n at 21 n. 4.  Ms. Emerson did not appear

12  to address Defendants' second argument related to the separate accounting requirements under the

13  probate code.  *See generally*, Opp'n.

14      Ms. Emerson's accounting claim is derivative of her breach of fiduciary duty claim which

15  was dismissed, and thus, as conceded, her accounting claim fails as well.   Accordingly, the Court

16  **GRANTS** Defendants' motion to dismiss Ms. Emerson's accounting claim based on the Class

17  Action Fee with prejudice.

### 2.    Tax Return Fee – Claim 2

19      Defendants argue that Ms. Emerson has failed to remedy the issues from the Court's last

20  order.  Defendants identify three areas where Ms. Emerson failed to correct her claim: (1) she has

21  not identified any legal requirement that Northern Trust do more than disclose the fees themselves;

22  she failed to establish (2) the complicated nature of the claims or (3) that an accounting was

23  incidental to a demand for equitable relief.  Mot. at 23.  Defendants also allege that Ms. Emerson

24  failed to meet the statutory prerequisites for an accounting under the probate code.  *Id.*

25  Conversely, Ms. Emerson argues she has corrected the issues from her original complaint, because

26  the accounting claim is incidental to her demand for equitable relief under the UCL and there is a

27  basis for the accounting other than cost.  Opp'n at 21-22.

28      The Court concludes Ms. Emerson has properly pleaded an accounting claim related to the

United States District Court
Northern District of California

Tax Return Fee.  As discussed above, a right to an accounting must be based on other claims and to assert this right, the plaintiff must satisfy at least one of the following requirements: (1) the relationship of the parties created an equitable duty to account; (2) the complicated nature of the accounts, or (3) an accounting is incidental to a demand for equitable relief.  *Janis*, 80 Cal. Rptr. at 554; *Rivera*, 756 F. Supp. 2d at 1202.   Courts have found an accounting claim can proceed where there is a fiduciary relationship between the parties.  *See Talece Inc. v. Zheng Zhang*, No. 20-CV-03579, 2021 WL 1749917, at *6 (N.D. Cal. May 4, 2021) ("A claim for accounting 'may be brought to require a defendant to account to a plaintiff for money or property: (1) where a fiduciary relationship exists between the parties, or (2) where, though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.'"); *O'Bannon v. NCAA*, No. C 09-1967, 2010 U.S. Dist. LEXIS 19170, at *21-22 (N.D. Cal. Feb. 8, 2010) (same).

Here, the accounting claim is based on Ms. Emerson's breach of fiduciary claim based on the Tax Return Fee which survived in part in the Court's previous order.  *See* Prior Order at 5-6. The parties do not contest there is a fiduciary relationship between Ms. Emerson and Defendants, and thus Ms. Emerson was not required to show "the complicated nature of the accounts."  *See Talece*, 2021 WL 1749917, at *6 ("Proof that the accounts are complicated is not necessary when there is an existence of a fiduciary relationship.").  Lastly, Ms. Emerson has pleaded that the accounting claim is incidental to some of her equitable claims, including those under the UCL. *See* FAC ¶¶ 200, 242.  At least one of Ms. Emerson's UCL claims, specifically the unlawful claim based on the Tax Return Fee, survived the first motion to dismiss.  *See* Prior Order at 4-6.  For these reasons, the Court **DENIES** Defendants' motion as it relates to Ms. Emerson's accounting claim based on the Tax Return Fee claim.

### E.    Unjust Enrichment or Quasi-Contract (Class Action Fee and Tax Return Fee) – Claims 3 and 7

In California, "[u]njust enrichment is not a cause of action."  *De Havilland v. FX Networks, LLC,* 230 Cal. Rptr. 3d 625, 646–47 (Ct. App. 2018); *Abuelhawa v. Santa Clara Univ*., 529 F. Supp. 3d 1059, 1070–72 (N.D. Cal. 2021) (collecting cases).  But, "[w]hen a plaintiff

United States District Court
Northern District of California

1    alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim

2    seeking restitution." *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015)

3    (internal quotations omitted).  "[A]n action based on an implied-in-fact or quasi-contract cannot lie

4    where there exists between the parties a valid express contract covering the same subject matter."

5    *Tsai v. Wang*, 2017 WL 2587929, at *7 (N.D. Cal. June 14, 2017) (quoting *Rutherford Holdings,*

6    *LLC v. Plaza Del Rey*, 166 Cal.Rptr.3d 864, 872-73 (Ct. App. 2014)).

7           Defendants argue a quasi-contract claim is inappropriate because there is an express

8    binding contracts that define the parties' rights.  Mot at 17.  Further, Ms. Emerson has failed to

9    plead any facts that she lacks an adequate remedy at law.  *Id*. at 18.  Lastly, Ms. Emerson's quasi-

10   contract claim duplicates remedies found under her UCL claim and should be dismissed as

11   superfluous.  *Id.*  The cases Northern Trust relies on for its contract arguments involve real estate

12   and insurance contracts, rather than trusts, and the trustee relationship is not merely governed by

13   the trust document.  Opp'n at 23. The cases that Defendants relied on do not expressly limit the

14   rule regarding express contracts to the real estate or insurance context, however, Ms. Emerson has

15   failed to cite to any legal authority that suggests otherwise.  *See Suruki v. Ocwen Loan Servicing,*

16   *LLC*, No. 15-CV-00773, 2016 WL 7741734, at *5 (N.D. Cal. July 22, 2016) (internal citations

17   omitted); *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc*., 114 Cal. Rptr.

18   2d 109, 125 n.26 (Ct. App. 2001)).

19          Ms. Emerson contends her unjust enrichment claim should not be dismissed.  She also

20   asserts that she has pleaded that an adequate remedy at law may not exist for herself and members

21   of her class.  *Id*. at 22-23.  Ms. Emerson did not appear to contest Defendants' third argument and

22   Defendants argue she has conceded it.  Reply at 7.

23          Ms. Emerson has failed to plead her unjust enrichment/quasi-contract claim for both fees.

24   When there is an express contract that governs the parties' rights, a party cannot proceed with a

25   quasi-contract claim.  *Suruki*, 2016 WL 7741734, at *5 (citing *California Med.*, 114 Cal. Rptr. at

26   125-26.  Here, Ms. Emerson acknowledges that there are contracts that govern the relationship

27   between the parties, and she has failed to plead that the contract between them is unenforceable or

28   invalid.  *See* Opp'n at 23.  While Ms. Emerson is correct that the trustee relationship is governed

United States District Court
Northern District of California

15

by more than the trust document, this assertion fails to support her argument that she can proceed with a quasi-contract claim when there is an existing contract between the parties.

Ms. Emerson relies on *Day v. Greene*, 59 Cal. 2d 404, 411 (1963) to argue that she can assert a quasi-contract claim, but that case is inapposite. There, the court held a constructive trust could be imposed where an individual obtained property through constructive fraud. *Id*. But that case does not address the issue of whether a party can proceed with a quasi-contract claim when there is an existing agreement between the parties. *Cf. id*.

Since the Court finds that the existence of express contracts is dispositive, the Court does not reach Defendants' two other arguments related to (1) whether Ms. Emerson adequately pleaded she lacked an adequate remedy at law or (2) whether duplicative remedies result in dismissal of Ms. Emerson unjust enrichment claim.

Accordingly, the Court **GRANTS** Defendant's motion as it relates to both fees, without leave to amend, since the Court finds amendment would be futile considering the existing contracts that govern the parties' relationship.

### F.    Statute of Limitations

Defendants assert that Ms. Emerson's tolling arguments are incorrect as a matter of law and are not based on well-pleaded allegations. Mot. at 7, 18-22. As a result, Defendants argue that any claims that arose more than three to four years before this lawsuit are time-barred. *Id*. at 7.

Ms. Emerson disagrees and argues all her claims are tolled based on three reasons. Opp'n at 10. First, Ms. Emerson asserts the Tax Return Fee claims are tolled based on *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 552 (1974) and other equitable tolling doctrines. *Id*. at 17-18. Second, Ms. Emerson asserts that all her claims are tolled based on the "discovery rule." *Id*. at 11-16. And lastly, Ms. Emerson asserts that all her claims are tolled based on the "continuing violation doctrine." *Id*. at 16-17. The Court considers each of these tolling doctrines below.

#### 1.    *American Pipe* and Equitable Tolling

In her complaint, Ms. Emerson asserted *American Pipe* tolls her claims related to a Tax

United States District Court
Northern District of California

Return Fee, due to a prior class action lawsuit, *Banks v. Northern Trust Corporation*, No. 2:16-cv-9141 (C.D. Cal. Dec. 9, 2016) ("*Banks*").[4]  *See* FAC ¶¶ 159-160.  In *Banks*, the district court denied class certification related to a tax return fee on December 6, 2019; the district court also granted summary judgment on behalf of the defendants on March 5, 2020.  In August 2021, the Ninth Circuit affirmed the district court's grant of summary judgment in *Banks*.  Just over a year later, in November 2022, Ms. Emerson filed the instant suit in state court.  *See* Notice of Removal, Ta Decl.

Defendants contend that *American Pipe* tolling does not apply.  Mot. at 11, 19. Essentially, all of Ms. Emerson's claims arise under California law.  Federal courts considering such claims must look to California state tolling principles to determine whether a previous action filed in federal court, or a different state court, tolls a state statute of limitations.  *Id*. at 19. Defendants claim that California does not recognize cross-jurisdictional tolling based on prior federal lawsuits.  *Id*.

Ms. Emerson asserts that Defendants have taken an impermissibly narrow reading of *American Pipe* tolling but in her opposition, she seems to have instead relied on California equitable tolling for her arguments.  *See* Opp'n at 17-18.   Ms. Emerson also reiterates that her case was originally filed in state court and Defendants removed it to federal court, suggesting that removal changes the analysis related to tolling.  *See id*. at 18.  In response, Defendants argue that Ms. Emerson fails to show that *American Pipe* or California equitable tolling apply, and the fact that a case was removed does not change the underlying analysis.  Reply at 8-9.  Per the parties' arguments, the Court will first address *American Pipe* tolling, followed by equitable tolling.

*American Pipe* allows for tolling within federal court for federal question class actions. 414 U.S. at 554.  But this rule does not necessarily apply to state law claims, which are governed by state law statutes of limitation and tolling principles.  *Id*.; *Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017, 1025 (9th Cir. 2008) (collecting cases).  The Ninth Circuit has noted that the California Supreme Court has not adopted cross-jurisdictional tolling (*i.e*., tolling a class action

---

[4] The Court's prior order discusses the *Banks* case in more detail.  Prior Order at 3-4.

1    based on a prior class action filed in another jurisdiction).  *See Clemens*, 534 F.3d at 1025 (holding

2    filing of Illinois class action did not toll statute as to California state law claims subsequently

3    brought in California federal court); *Centaur Classic Convertible Arbitrage Fund Ltd. v.*

4    *Countrywide Fin. Corp*., 878 F. Supp. 2d 1009, 1017 (C.D. Cal. 2011) ("This Court is persuaded

5    that cross-jurisdictional tolling, as discussed by the Ninth Circuit … includes all situations where a

6    class action is filed outside the California state court system …").

7         *American Pipe* does not apply to Ms. Emerson's claims.  Ms. Emerson asserts that a prior

8    class action filed in the Central District of California tolls the claims at issue here.  But all of Ms.

9    Emerson's claims are brought under California law, and since cross-jurisdictional tolling is not

10   recognized under California law, cross-jurisdictional tolling does not apply.  *See Centaur Classic*,

11   878 F. Supp. 2d at 1017.  Moreover, removal of Ms. Emerson's case does not change the

12   underlying analysis associated with *American Pipe*.  *See e.g., Yetter v. Ford Motor Co*., 428 F.

13   Supp. 3d 210, 217, 227 (N.D. Cal. 2019) (declining to apply *American Pipe* tolling in a case that

14   was removed to federal court).

15        Where *American Pipe* is inapplicable, the Ninth Circuit has applied equitable tolling to

16   California class members, based on a three-factor test: "(1) timely notice to the defendant in the

17   filing of the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend

18   against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the

19   second claim."  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185, 1187-88 (9th Cir. 2009).

20   Regarding the third element, California courts will consider whether the plaintiff delayed filing the

21   second suit.  *Yetter*, 428 F. Supp. at 229-30 (noting "delays similar in length to 16 months

22   demonstrated unreasonable conduct, thereby justifying the denial of equitable tolling.").

23        "Generally, the applicability of equitable tolling depends on matters outside the pleadings,

24   so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to

25   the complaint) if equitable tolling is at issue."  *Huynh v. Chase Manhattan Bank*, 465 F.3d 992,

26   1003–04 (9th Cir. 2006) (citing *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th

27   Cir. 1995)).  There are cases, however, where it was evident based on the face of the complaint

28   that the plaintiff could not prevail as a matter of law on equitable tolling.  *Cervantes v. City of San*

United States District Court
Northern District of California

*Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (collecting cases).

Here, Ms. Emerson failed to explicitly plead equitable tolling in her complaint and instead only discussed it in her opposition brief. But it may be possible for Ms. Emerson to rely on equitable tolling, assuming she pleaded supporting facts in her complaint. *See Biotechnology Value Fund, L.P. v. Celera Corp.*, 12 F. Supp. 3d 1194, 1206 (N.D. Cal. 2013) ("It is not necessary that the complaint explicitly plead equitable tolling," if "facts are alleged suggesting the applicability of equitable tolling to suspend the running of the statute [of limitations].") (citations omitted).

Ms. Emerson asserts that she has satisfied all three parts of the equitable tolling test. Opp'n at 17-18. First, Defendants were aware of the *Banks* lawsuit, since they defended against it. *Id*. at 17. Second, since Defendants were involved in *Banks*, there should be no prejudice in gathering evidence to defend against the second suit. *Id*. at 18. While these factors could support Ms. Emerson's equitable tolling arguments, they are not found in her actual complaint. *See generally,* FAC. At most her complaint states that certain claims were tolled based on the filing of *Banks*. *See* id. ¶¶ 159-160. But she does not state whether the prior lawsuit involved the same or similar parties as the current suit, or if there would be prejudice to Defendants.

Even assuming Ms. Emerson was able to satisfy the first two elements of the equitable tolling test, the Court finds she has not satisfied the third factor of the equitable tolling test. In August 2021, the Ninth Circuit affirmed the district court's grant of summary judgment in *Banks*. Just over a year later, in November 2022, Ms. Emerson filed the instant suit in state court. *See* Notice of Removal, Ta Decl. As courts have recognized, equitable tolling has been denied for similar delays. *See Yetter*, 428 F. Supp. 3d at 229-30 (noting courts tend to deny equitable tolling for delays of over one year); *Darnaa, LLC v. Google, Inc.*, No. 15-CV-03221, 2016 WL 6540452, at *5 (N.D. Cal. Nov. 2, 2016) (where equitable tolling applied to a case, most involved time gaps of less than ten months or no gap at all).

Accordingly, the Court finds that Ms. Emerson's claims regarding the Tax Return Fee before three or four years, depending on the claim, are time-barred. Ms. Emerson is **GRANTED** leave to amend, as it may be possible for her to plead facts as to all three elements of equitable

tolling, including an explanation for her delay in filing suit.

### 2.    Discovery Rule

Defendants argue that the discovery rule does not apply because Ms. Emerson admitted that she received documents which put her on inquiry notice. Mot. at 11, 20-21. In addition, Ms. Emerson's allegations related to the discovery rule are based primarily on "information and belief" and are not supported by well-pleaded facts. *Id*. at 21. Ms. Emerson disagrees and continues to assert that the discovery rule tolls all her claims to 2013. Opp'n at 11. While Ms. Emerson concedes that she received certain documents, she claims that the documents were not sufficient to place her on notice that a fee was being marked up in violation of the trustee's fiduciary duties. *Id*. at 12-16. For her arguments, Ms. Emerson relies on *Henderson v. Bank of N.Y. Mellon*, 332 F.Supp.3d 419, 434 (D. Mass. 2018). *Id*. at 15-16; FAC ¶ 162.

In its reply, Defendants raise four points. First, Ms. Emerson fails to plead the elements required by the California discovery rule, including the time and manner of discovery and the inability to have made earlier discovery, despite reasonable diligence. Reply at 10. Second, Ms. Emerson ignored certain sections of the California Probate Code, which incorporated the California discovery rule. *Id.* at 10-11. Third, Ms. Emerson's allegations establish that she was at least on inquiry notice, more than four years before she filed this case. *Id*. at 11. And fourth, *Henderson* was not decided under California law and its facts differ from the instant case. *Id*. at 12.

"The discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003) (citation omitted). "The purpose of the discovery rule is to protect those who are ignorant of their cause of action through no fault of their own." *Id*. (citation omitted). "Ultimately, the discovery rule 'permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue.'" *Id*. (citation omitted). To invoke the discovery rule, the plaintiff must plead facts showing "'(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Chubb Custom Ins. Co. v. Space*

United States District Court
Northern District of California

*Sys./Loral, Inc*., 710 F.3d 946, 975 (9th Cir. 2013) (citing *Camsi IV v. Hunter Tech. Corp*., 282 Cal. Rptr. 80, 86 (Ct. App. 1991)).

The Court concludes the discovery rule does not apply to Ms. Emerson's claims.  First and foremost, to rely on the discovery rule, Ms. Emerson must plead facts that reflect the time and manner of discovery, but she has not done so.  *See id*.; *see generally*, FAC.   Instead, Ms. Emerson relies on conclusory language that the discovery rule applies, without stating the actual disclosures that made her aware of the mark-ups or the information she specifically received.  *See Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1089 (N.D. Cal. 2007) (declining to apply the discovery rule where plaintiffs failed to plead facts that "describe the time and manner of their discovery or their due diligence.")

*Henderson* suggests that Ms. Emerson may be able to rely on the discovery rule for her claims, assuming she can satisfy the other requirements as discussed above.  But counsel for Ms. Emerson made certain arguments at hearing that suggest Ms. Emerson was on inquiry notice.  In her amended complaint, Ms. Emerson's harm is based on overcharges or markups of certain fees, such as her Tax Return Fee.  *See e.g*., FAC ¶¶ 76, 166.  But at the hearing, Ms. Emerson's counsel asserted that they were seeking recovery of the entire Tax Return Fee, not just a portion.  This suggests that the harmful conduct is the fee as a whole, rather than an unreasonable mark-up. Statements notifying Ms. Emerson of the existence of the fees should have been sufficient to put her on notice.

Accordingly, the Court finds that Ms. Emerson's claims are not tolled based on the discovery rule, but Ms. Emerson is **GRANTED** leave to amend.

### 3.    Continuing Violation Doctrine

Defendants argue that the continuing violation doctrine does not apply to Ms. Emerson's claims because each supposedly unlawful charge constitutes a separate violation.  Mot. at 11-12, 22; Reply at 12-13.  Conversely, Ms. Emerson claims that the doctrine does apply because the wrongful course of conduct became apparent only through the accumulation of a series of harms. Opp'n at 16-17.

The continuing violation doctrine applies to "injuries [that] are the product of a series of

small harms, any one of which may not be actionable on its own." *Aryeh v. Canon Bus. Sols.*, *Inc.*, 55 Cal. 4th 1185, 1197 (2013) (internal citations omitted). "Allegations of a pattern of reasonably frequent conduct" may "justify treating the acts as an indivisible course of conduct actionable in its entirety," even though some of the alleged conduct may have occurred outside the statute of limitations. *Id.* at 1198. (internal citations omitted). This doctrine does not apply to a "series of discrete, independently actionable alleged wrongs." *Id.*

The continuing violation doctrine does not apply to Ms. Emerson's claims. Each of the challenged fees are themselves unlawful and are an independent basis for Ms. Emerson's claims. *See e.g., Tawfik v. JPMorgan Chase Bank, N.A.*, No. 20-CV-02946, 2020 WL 5074398, at *7 (N.D. Cal. Aug. 26, 2020) (declining to apply the continuing violation doctrine where overcharges constituted "discrete, independently actionable" wrong and the wrongful conduct was not made apparent only through an accumulation of overcharges). Moreover, the cases that Ms. Emerson relies on are inapposite, because in those situations each individual act was not in and of itself actionable. *See Birschtein v. New United Motor Mfg., Inc.*, 112 Cal. Rptr. 2d 347, 353 (2001) (applying doctrine in the context of sexual harassment, where individual events were not actionable); *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 802 (2001) (applying doctrine in context of employer harassment). In addition, at the hearing, counsel for Ms. Emerson acknowledged that they were not aware of any cases where courts applied the continuing violation doctrine in a financial overcharge context. And while Ms. Emerson claims that the course of conduct only became apparent through an accumulation of harms, she fails to assert any facts in her complaint to make this allegation plausible.

Accordingly, the Court finds that Ms. Emerson's claims are not tolled based on the continuing violation doctrine. Ms. Emerson may amend her complaint with additional facts to support her continuing violation doctrine arguments.

### G.     Claims Against NT Corp

Defendants assert that Ms. Emerson has failed to plead any facts that would show that NT Corp directly participated in the wrongful conduct. Mot. at 7, 24-25. At best, Defendants claim that Ms. Emerson's allegations reflect normal activities of a corporate parent. *Id.* at 7, 25. And

the existence of a parent-subsidiary relationship is insufficient on its own to establish a parent corporation's liability for the acts of its subsidiaries.  *Id*. at 25.  In addition, Defendants argue that Ms. Emerson's allegations are conclusory, implausible, and rely primarily on assertions based on "information and belief."  *Id*. at 24-25.  Ms. Emerson avers that the claims against NT Corp should not be dismissed because she pleaded facts that establish NT Corp operated as more than a parent and was directly involved in the alleged breaches.   Opp'n at 23-24.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted).  Activities such as "monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability."  *Id*. at 72.  However, the parent is liable if "'the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management' and 'the parent is directly a participant in the wrong complained of.'"  *Id*. at 64 (citation omitted).

Here, Ms. Emerson's allegations appear to be more akin to those of a parent company that do not give rise to liability.  *See id*. at 72.  For example, Ms. Emerson now asserts that a foreign tax services entity is part of NT Corp, and that NT Corp controls this entity.  *See* FAC ¶¶ 12-13, 41, 43, 89, 103.  But having a foreign subsidiary and managing its high-level affairs, does not reflect direct participation in the harm.  *See Bestfoods*, 524 U.S. at 72; *Ranza v. Nike, Inc*., 793 F.3d 1059, 1074 (9th Cir. 2015) ("A parent corporation may be directly involved in financing and macro-management of its subsidiaries ... without exposing itself to a charge that each subsidiary is merely its alter ego.") (internal citations omitted).

Accordingly, the Court **GRANTS** Defendants' motion as it relates to its NT Corp claims, without prejudice.  Ms. Emerson may amend her complaint with additional facts to support her claims of direct liability.

## IV.   CONCLUSION

For the foregoing reasons, the Court rules as follows:

23

1    Defendants' motion to dismiss Ms. Emerson's second claim for accounting (Tax Return

2   Fee) is **DENIED**.  Defendants' motion to dismiss Ms. Emerson's third claim for unjust

3   enrichment (Tax Return Fee) is **GRANTED** with prejudice.  Defendants' motion to dismiss Ms.

4   Emerson's fourth claim for breach of the unlawful prong of the UCL (Class Action Fee) is

5   **GRANTED** with prejudice.  Defendants' motion to dismiss Ms. Emerson's fourth claim for

6   breach of the unfair prong of the UCL (Class Action Fee and Tax Return Fee) is **GRANTED** with

7   prejudice for the Class Action Fee and with leave to amend for the Tax Return Fee.  Defendants'

8   motion to dismiss Ms. Emerson's fifth claim for breach of fiduciary duty (Class Action Fee) is

9   **GRANTED** with prejudice.  Defendants' motion to dismiss Ms. Emerson's sixth claim for

10  accounting (Class Action Fee) is **GRANTED** with prejudice.  Defendants' motion to dismiss Ms.

11  Emerson's seventh claim for unjust enrichment (Class Action Fee) is **GRANTED** with prejudice.

12  Defendants' motion to dismiss Ms. Emerson's claims against NT Corp is **GRANTED** with leave

13  to amend.  Lastly, Ms. Emerson has leave to amend her tolling arguments.

14    The Plaintiff, Ms. Emerson, has leave to amend and may file a second amended complaint

15  within 14 days of this Order.  The Plaintiff is directed to file a redlined complaint as an attachment

16  to its second amended complaint.

17    **IT IS SO ORDERED.**

18  Dated: November 15, 2023

19

20

21  TRINA L. THOMPSON
    United States District Judge